Ira L. SNIDER, Plaintiff,

v.

LONE STAR ART TRADING CO., INC., a Texas corporation; Art Realties Trading Co., Inc., a Texas corporation; Samuel Shuman, London Arts, Inc., a Michigan corporation; David N. Zelmon, Arnold Klein, Ivo Kirschen, Eugene Schuster and Monis Schuster, Jointly and Severally, Defendants.

Civ. A. No. 86–CV–72652–DT.

United States District Court,
E.D. Michigan, S.D.

April 9, 1987.

**1250**

Mayer Morganroth, Southfield, Mich., for plaintiff.

Richard A. Rossman, Detroit, Mich., for defendant Klein.

Noel A. Gage, John K. Parker, Ivy O. Giller, Southfield, Mich., for defendant Lone Star, Art Realties and Shuman.

Richard E. Zuckerman, Thea Marie Sankiewicz, Troy, Mich., for defendant London Arts, Zelmon, and Schusters.

## MEMORANDUM OPINION AND ORDER

JULIAN ABELE COOK, Jr., District Judge.

Two groups of Defendants in the instant cause have filed motions to dismiss Plaintiff's Second Amended Complaint.[1] The Complaint alleges that Defendants have violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.* by committing fraud in the sale of certain art plates and screens. This Court does not believe that an oral argument will facilitate a resolution of these issues. Therefore, it will resolve these motions on the basis of the briefs.

In evaluating Defendants' respective Motions to Dismiss under *Fed.R.Civ.P.* 12(b)(6), they must show that there is no set of plausible facts under which Plaintiff could state a cause of action. Thus, his well pleaded allegation must be accepted as true. This Court will now address each of the Defendants' several arguments.

---

1. On November 3, 1986, Defendants, London Arts, Inc., David N. Zelmon, Eugene Schuster, and Monis Schuster, filed a Motion to Dismiss. Defendants, Lone Star Art Trading Co., Inc., Art Realties Trading Co., Inc. and Samuel Shuman, filed a Motion to Dismiss on December 2, 1986. Plaintiff has responded to both motions. Defendant, Arnold Klein, has also filed a concurring Motion to Dismiss.

## I

Defendants allege that Plaintiff has not shown the existence of an "enterprise" as required by the RICO statute. Their argument has two major points. First, they assert that Plaintiff confuses "enterprise" with "pattern of racketeering activity." [2] *See United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Second, Defendants argue that Plaintiff has improperly confused them with the enterprise at numerous points in his Second Amended Complaint. They cite numerous cases to support their viewpoint on this issue. *See e.g. Zahra v. Charles,* 639 F.Supp. 1405, 1407 (E.D.Mich.1986); *Bennett v. United States Trust Company of New York,* 770 F.2d 308, 315 (2nd Cir.1985).

■ Defendants are correct that Plaintiff does identify the enterprise with the pattern of racketeering activity.[3] However, this Court must reject those cases, which have been cited by Defendant as holding that the enterprise must be an entity which is separate and apart from the association of persons who commit the RICO violation. The language of the RICO statute does not contain such a requirement. (An "enterprise [includes] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals association in fact although not a legal entity." 18 U.S.C. § 1961(4)).

Moreover, the Sixth Circuit has rejected Defendant's view. In *United States v. Qaoud,* 777 F.2d 1105 (6th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1499, 89 L.Ed.2d 899, the Sixth Circuit rejected the view that an enterprise must be distinct from the pattern of racketeering activity:

Although "enterprise" and "pattern of racketeering activity" are separate elements, they may be proved by the same evidence. In *United States v. Mazzei,* 700 F.2d 85 (2d Cir.), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983), construing *United States v. Turk-*

ette, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the court rejected the defendant's contention that a RICO conviction requires proof that the enterprise and pattern of racketeering activity were distinct.

We agree that *Turkette* requires the government to prove both the existence of an "enterprise" and a "pattern of racketeering activity." We do not, however, read *Turkette* to hold that proof of these separate elements be distinct and independent, as long as the proof offered is sufficient to satisfy both elements. There is nothing in the language or legislative history of the Act to support the appellant's view. Moreover, it does not make sense to impose a "distinctness" requirement in RICO cases. The appellant would have us rule that his actions are beyond the purview of RICO because he engaged only in point shaving and did not commit criminal acts other than those specifically contemplated in the conspiracy. Mazzei's interpretation would lead to the anomalous result that a large scale underworld operation which engaged solely in trafficking of heroin would not be subject to RICO's enhanced sanctions, whereas small-time criminals jointly engaged in infrequent sale of contraband drugs and illegal handguns arguably could be prosecuted under RICO. The Court will not place its *imprimatur* on such a counter productive interpretation. *Id.* at 89.

Other courts have likewise rejected the position that there must be proof of an enterprise distinct from proof of a pattern of racketeering. *See, e.g., United States v. Cagnina,* 697 F.2d 915, 920–21 (11th Cir.1983) (citing *United States v. DeRosa,* 670 F.2d 889, 895–96 (9th Cir. 1982), *cert. denied,* 464 U.S. 856, 104 S.Ct. 175, 78 L.Ed.2d 157 (1983); *United States v. Bagnariol,* 665 F.2d 877, 890–91 (9th Cir.1981), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982).

**2.** Second Amended Complaint ¶ 16, 17.

**3.** *See e.g.* Second Amended Complaint ¶ 16 ("that said pattern consisted of six different

fraudulent schemes or enterprises to defraud Plaintiff).

*Also see United States v. Griffin,* 660 F.2d 996, 1001 (4th Cir.1981), *cert. denied,* 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 313 (1982) and *United States v. Diecidue,* 603 F.2d 535, 545 (5th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980).

Although *Griffin* and *Diecidue* are criminal cases, this does not lessen the applicability of these cases to an analysis of disputes relating to civil RICO because the statutory language at issue is the same. *See e.g. Eaby v. Richmond,* 561 F.Supp. 131 (E.D.Pa.1983). *Qaoud's* interpretation is supported by the plain language of the RICO statute which refers to *"any* individual ... association ... and *any* ... group of individuals associated in fact ..." (emphasis provided). The use of "any" means that the RICO statute should not be construed to say "only" those groups, whose existence is distinct from the pattern of activity, are enterprises. The word "any" does not allow for such a limitation. *See United States v. Sutton,* 642 F.2d 1001, 1007 (6th Cir.), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 995 (1981) (en banc) ("The use of the term 'any' before 'enterprise' helps to make clear that 'enterprise'. is used in an all encompassing sense").

Defendants rely, in part, upon *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), where the Supreme Court held that the existence of an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* at 583, 101 S.Ct at 2528. However, *Qaoud* specifically held that *Turkette* does not oblige this Court to adopt the position which Defendants now advance; to wit, that the enterprise must be separate and continuing apart from the illegalities.

Those cases which have been relied on by the Defendants, such as *United States v. Bledsoe,* 674 F.2d 647 (8th Cir.), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982) often make policy arguments to support the view that an enterprise must have an "ascertainable structure" which is distinct from the association that is necessary to conduct the pattern of racketeering injury. These cases have determined that any criminal or fraudulent collaboration could be called an enterprise and, thus, made subject to a RICO claim. Although sympathetic to such a policy position, this Court is bound by Congress' unambiguous statutory language. Thus, it must, and does, conclude that Plaintiff is permitted to allege an enterprise which consists of an association whose purpose is to make money through repeated fraudulent criminal activity. Moreover, this Court finds numerous allegations to such effect within this somewhat inartfully drafted Complaint.[4]

Defendants next claim that Plaintiff has failed to allege an enterprise which is separate from them, as individuals. They point out that (1) paragraphs 38 and 41 of the Second Amended Complaint state that Defendants are enterprises and vice-versa, and (2) paragraph 40 of the Second Amended Complaint even says that each Defendant is an enterprise. Defendants cite numerous cases which require the two entities to be separate. *See e.g. Zahra v. Charles,* 639 F.Supp. 1405, 1407 (E.D.Mich. 1986) (Pratt, J.); *Barker v. Underwriters at Lloyd's, London,* 564 F.Supp. 352, 357 (E.D.Mich.1983) (Freeman, J.); *Bennett v. United States Trust Company of New York,* 770 F.2d 308, 315 (2d Cir.1985). These cases note that the reason for the separateness requirement is based upon the RICO statute which mandates that "persons" participate in the enterprise. These cases conclude that Defendants cannot participate in the enterprise if, in fact, they are the enterprise.

■ This Court acknowledges that there is precedent to support the view that a Defendant can be an enterprise under the provisions of RICO. *See e.g. United States v. Hartley,* 678 F.2d 961, 989 (11th

---

**4.** *See e.g.* Second Amended Complaint ¶¶ 16, 17 ("That each of said *enterprises* consisted of many predicate acts in furtherance of said fraudulent schemes, which in turn comprised the *pattern of racketeering* ...").

Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983). However, this Court notes that it is somewhat unsympathetic to the reasoning in *Hartley,* and prefers the interpretation of the issue which is found in *Haroco v. American National Bank & Trust, Co. of Chicago,* 747 F.2d 384 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). *Haroco* said that a RICO enterprise could only be the Defendant when the enterprise played an active rather than a passive role in the fraud. Nevertheless, this Court does not need to choose between these two interpretations of this issue. Even accepting Defendants' interpretation for the purpose of resolving this dispute, the Complaint can be construed to state an enterprise which is separate and distinct from them.

Plaintiff has alleged that a combination of individuals and corporations had committed fraud by offering him certain art plates and screens while, at the same time, misrepresenting the value of the articles. Such an association meets the definition of "enterprise." 18 U.S.C. § 1961(4). Numerous courts have construed "enterprise" broadly enough to encompass such a definition where there is an association. *See e.g. United States v. Thevis,* 474 F.Supp. 134, 138 (N.D.Ga.1979), *aff'd,* 665 F.2d 616 (5th Cir.1982), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982) ("the Court determines that the alleged combination of individuals associated in fact with various corporations is an association and thus, an enterprise under 18 U.S.C. § 1961(4)."). *See also Turkette,* 452 U.S. at 583, 101 S.Ct. at 2528 ("The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct"). The Complaint can be construed, in part, as having already set forth such a theory.[5] Plaintiff is obviously confused as to the theory of enterprise upon which he intends to rely. For example, Plaintiff calls each Defendant an "enterprise" and other times, he calls the patterns "enterprises."

Nevertheless, when utilizing the standards of review for motions which have been brought under *Fed.R.Civ.P.* 56, his allegations within the Complaint are legally sufficient to state the combination of Defendants as an "enterprise." Such a construction leads this Court to conclude that Plaintiff's enterprise can be construed to be the association of all Defendants. Plaintiff is directed to amend his Complaint on this point within a period of twenty days from the date of this Order. Failure to do so will constitute a waiver.

Such a construction of the Complaint means that each Defendant is not the enterprise. On the basis of this record, the alleged enterprise is a loose association of entities. Although the persons who make up the association have been identified as Defendants, this association has never been so labelled. Thus, even under Defendants' test, the Complaint can be justifiably construed to have stated an enterprise which is different from Defendants.

Moreover, the kind of "association in fact" alleged here cannot logically be a RICO defendant. In *Haroco,* the Court said:

> However, a corporation and an association in fact differ substantially with respect to the "person" element. Where persons associate "in fact" for criminal purposes, each person may be held liable under RICO for his, her or its participation in conducting the affairs of the association in fact through a pattern of racketeering activity. *But the nebulous association in fact does not itself fall within the RICO definition of "person."* We doubt that an "association in fact" can, as such, hold any interest in property or even be brought into court. In the association in fact situation, each participant in the enterprise may be a "person" liable under RICO, but the association itself cannot be.

---

**5.** *See e.g.,* Paragraph 35 of the Second Amended Complaint reads ("That the Defendant, Jointly and Severally, misrepresented to the Plaintiff that the art master plate or art master had great value at the time of the purchase; said represen- tations ... furthermore supported by the association knowing the master plates were of no substantive value"). Paragraph 40 reads ("said Defendants ... each of whom, participated in ... an enterprise").

747 F.2d at 401 (emphasis added). This excerpt indicates that an "association in fact" cannot be the "person" (i.e., the Defendant) under the RICO statute. Thus, such associations really never create the problem of being both Defendant and enterprise. Plaintiff has alleged an enterprise which is separate from the Defendant.

## II

Defendants allege that Plaintiff has pled certain predicate acts of racketeering which are not recognized by the RICO statute. They also claim that Plaintiff has failed to assert the recognized predicate acts of mail and wire fraud with the particularity which is required by *Fed.R.Civ.P.* 9(b).

■ Defendants are correct, in part. The claimed predicate acts, which have been set out at Paragraphs 36(B) and (E), as well as those in Paragraphs 36(C) and 39, do not satisfy the RICO statute. Those acts should be dismissed. Plaintiff alleges a violation of 18 U.S.C. § 1952 in Paragraphs 36(B) and 36(E). Yet, those acts, which describe travel in foreign commerce to obtain money illegally, do not fall into the categories of "unlawful activity" that are specified in 18 U.S.C. § 1952(b). Moreover, the alleged violation of 18 U.S.C. § 371, as found in Paragraphs 36(C) and 39 of the Complaint, do not constitute a predicate act. However, Plaintiff has alleged various acts of mail and wire fraud which satisfy the predicate acts requirements.[6]

Defendants' allegations regarding particularity are somewhat troubling. This Court dismissed Plaintiff's original Complaint because it did not satisfy the requirement of *Fed.R.Civ.P.* 9(b), in that the requirement "... [i]n all all averments of fraud ... the circumstances constituting fraud shall be stated with particularity." This Court relied heavily on *Bennett v.*

*Berg,* 685 F.2d 1053 (8th Cir.1982), *aff'd in part en banc,* 710 F.2d 1361 (8th Cir.1983), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983) in support of its earlier decision to dismiss the Complaint. Plaintiff's first Complaint lacked particularity with regard to the nature of the document in which there were purported misrepresentations, the nature of the misrepresentation, the identity of the person who issued the documents, and the dates when the documents were issued. The earlier Complaint contained repeated general references to "various omissions" or by "various Defendants." Although a similar Complaint in *Bennett* had been found to be too vague, this Court allowed an amendment of the pleadings to correct the deficiencies.

In contrast to *Bennett,* each of the acts of mail and wire fraud in Paragraph 17 of this Second Amended Complaint do specify the Defendant who allegedly committed the act.[7] The reference to "Information Memorandum" within the Second Amended Complaint identifies the title of the document for the benefit of Defendants, whereas Plaintiffs, in *Bennett,* only referred to "pamphlets [of a] typical life care contract." In this case, Plaintiff has certainly given Defendants enough information to readily retrieve the documents which are alleged to be fraudulent. Some documents were even attached. Another allegation specifically states that it involves the Larry Zox appraisal. *Bender* found inadequate references to "uncertain" expenses. References to "various" omissions were present in the original Complaint. They are absent from this Complaint. Additional specificity regarding omissions is impossible without requiring Plaintiff to complete all of his investigative work prior to

---

6. *See e.g.* Paragraphs 17, 36(a) and 36(d).

7. *See e.g.* Paragraph 17(c) ("Defendants, Monis Schuster and Eugene Schuster"). Paragraph (e) of the Second Amended Complaint states:
   Defendant, Lone Star Art Trading Co., Inc. and Defendant, Samuel Shuman, in conspiracy with all of the other Defendants, except

Arnold Klein, conspired to mail to Plaintiff a document called "Information Memorandum" containing false, misleading, untruthful and fraudulent representations and agreements in an attempt to induce Plaintiff to purchase art and art objects....

filing the Complaint and then forcing him to reveal that discovery.[8]

However, there is one problem in the Second Amended Complaint, in that it does not give the specific date of each alleged misrepresentation. Nevertheless, this Court does not believe that *Bennett* or *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir.1984), require that the exact date of the alleged tort be pled. In discussing the facts, *Bennett* summarizes the standard by saying:

> These allegations utterly fail to apprise defendants of the claims against them and the acts relied upon as constituting the fraud.

*Bennett*, 685 F.2d at 1062.

■ Thus, the general references to periods of time, such as "Fall of 1979" or "quarterly statements mailed through March 18, 1986," are sufficient when there is enough other information within the Complaint with which Defendants can readily identify the mailing. This Court believes that Plaintiff's frequent references to specific dates in such Paragraphs as 17(b), (f), (g), and (h) indicates that he has been as specific as possible. Plaintiff has pled fraud with sufficient particularity.

### III

Defendants contend that Plaintiff has only asserted one criminal scheme in which they allegedly defrauded him regarding the value of art works. They contend that the cases which followed *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), indicate that one criminal scheme is not enough to satisfy the requirement that there be a "pattern of racketeering activity." 18 U.S.C. § 1961(5). However, numerous post-*Sedima* courts have said that one criminal scheme can be enough if there is enough "continuity" and a "relationship" between the predicate acts. *See e.g. Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir.1986).

■ Moreover, this Court has already determined in an unrelated case that one scheme or episode may be enough when accompanied by the requisite predicate acts with "continuity" and "relationship." *See Michigan National Bank v. Scandex Steel Corp.*, No. 85–4494 (E.D.Mich. Oct. 2 1986). This Court had, and continues to have, four principal reasons for taking this position. First, there is no requirement within the RICO statute or in *Sedima* that there be more than one criminal scheme. Since the Congress had the ability to include legislative language within the RICO statute which would have required two predicate acts for more than one scheme, the omission of such any requirement is significant. Second, the Sixth Circuit has noted that RICO should be broadly construed for a plaintiff's remedial purpose. *Qauod*, 777 F.2d at 115. Third, the addition of a requirement of more than one scheme would create more confusion in an already befuddled area. For example, this Court—under such a proposal—would be obliged to determine when one criminal scheme ended and/or another began. Although not an entirely impossible mission, such a task would make the administration of justice by the Court an extremely arduous task. Finally, it would be counterproductive if one massive racketeering scheme could not be attacked under RICO whereas several insignificant schemes could.

In addition, this Court notes that Plaintiff may well have already alleged multiple criminal schemes because six such schemes have been specified. They involve separate sales of paintings. Thus, Plaintiff has alleged a pattern.

### IV

Defendants allege that Plaintiff has not shown any injury from their alleged investment of funds which were obtained by racketeering. Thus, they argue that Plaintiff's claim under 18 U.S.C. § 1962(a) must be dismissed because causation is a requirement for that section. *See e.g. Heri-*

---

**8.** Counsel for Arnold Klein says Plaintiff only pled that Klein conspired to mail documents containing fraudulent information "in 1980."

However, the Complaint said that Klein mailed the documents on June 20, 1980. This is quite specific and would not justify a dismissal.

*tage Insurance Company of America v. First National Bank of Cicero,* 629 F.Supp. 1412 (N.D.Ill.1986); *Econo-Car International, Inc. v. Agency Rent-A-Car, Inc.,* 589 F.Supp. 1368, 1372 (D.Mass.1984); *DeMyro v. E.F. Hutton,* 662 F.Supp. 308, (S.D.N.Y.1986).

18 U.S.C. § 1962(a) states that:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which, affect, interstate or foreign commerce.

Contrary to the cases which have been cited by Defendants, the statute does not require Plaintiff to allege that he was harmed by the investment. Instead, it only requires allegations that (1) there is an enterprise, (2) Defendants derived income from a pattern of racketeering activity, and (3) at least some part of that income was used to acquire an interest in or to operate an enterprise. *See e.g. United States v. Cauble,* 706 F.2d 1322, 1331 (5th Cir.1983).

■ However, this Court need not choose between *Cauble* and those cases which have been cited by Defendants as to which is correct. Even assuming that Defendants are correct, Plaintiff has clearly alleged an adequate causation of injury by the investment. His injury from the investment is specifically alleged in Paragraphs 38 and 40 where Plaintiff contends that the money, which was derived from the fraud, was used to continue the enterprise. Defendants believe that such an allegation is inadequate because "(i)f Plaintiff has been injured, he has only been injured by reason of the alleged fraud."[9] Their argument fails because there is no real difference between the alleged injuries which were caused by the fraud and by the investment. On the basis of Plaintiff's allegations, the enterprise in the instant cause appears to exist only for the purpose of committing the fraud. It is not a separate legal entity. Any money, which was used to commit fraud in this case, represents an investment in the enterprise. Thus, even if this Court adopted Defendants' standard, Plaintiff's claim under 18 U.S.C. § 1962(a) would survive.

The cases, which were relied upon by Defendants, are inapposite because they involve enterprises that existed independently from the fraud. *Heritage* involved a bank and *DeMyro* involved a brokerage firm. An investment of illegally derived income in those enterprises could have been an investment in the legitimate activities of the enterprise. Thus, such investment might not have proximately caused a plaintiff's injuries. However, the investment in the enterprise in this case is inseparable from the fraud. Causation of injury clearly exists.

## V

Both sets of Defendants argue that Plaintiff's claims are barred by the relevant statute of limitations. Both agree that RICO does not set forth a provision which sets forth a limitation of action. Consequently, the Sixth Circuit held in *Silverberg v. Thomson McKinnon Securities, Inc.,* 787 F.2d 1079 (6th Cir.1986) that courts must look to the most analogous state statute of limitations. One group of Defendants suggest that this Court should adopt the three year limitation for bringing claims of injury to property. M.C.L.A. § 600.5805(8). The other set of Defendants claim that the Michigan Blue Sky Law Statute, M.C.L.A. § 451.810, is applicable. That statute contains a two to four year period of limitations, depending on circumstances.

Plaintiff, on the other hand, argues the limitations period for common law fraud, M.C.L.A. § 600.5813, ought to apply. M.C.L.A. § 600.5813 contains a six year statute for personal actions when no other limitation period has been stated. His argument also raises the issue of whether M.C.L.A.

---

**9.** Defendants' London Arts Brief in Support of   Motion to Dismiss at 9.

§ 600.5855 is, or is not, applicable. That statute says that an aggrieved party has a period of two years from his discovery of a concealed fraud in which to initiate legal action if a lawsuit would otherwise be barred by the applicable statute of limitations.

■ Plaintiff is correct. He correctly argues that if the Court found common law fraud to be the most analogous state action, then M.C.L.A. § 600.5813 would be applicable. In *Case v. Goren*, 43 Mich.App. 673, 204 N.W.2d 767 (1972), the court found the six year statute to be applicable where plaintiff sought to recover damages for fraudulent misrepresentation in connection with his purchase of stock in a company. Here, the issue which involves allegations of fraud regarding representations about the probability of certain art screens is virtually identical to *Goren*.

This Court also finds that the RICO action here is best analogized to a fraud claim. In *Silverberg*, the RICO claim was based on fraud in the sale of securities. Nevertheless, the Court found the analogy to state fraud claims to be superior to an analogy to the Michigan Blue Sky Laws. If a RICO claim, which is based on the fraudulent sale of securities, cannot be analogized to a state Blue Sky Law, this case certainly cannot be so analogized. In *Benoay v. Decker*, 517 F.Supp. 490 (E.D. Mich.1981) *aff'd*, 735 F.2d 1363 (6th Cir. 1984), the Court held that allegations of a violation of Section 10(b) of the Securities Act of 1934 were governed by the fraud limitations statute. *Id.* at 496. The other Defendants claim that a RICO claim seeks to remedy those injured in business or property. *See e.g.* 18 U.S.C. § 1964(c). Therefore, they argue that M.C.L.A. § 600.5805(8) applies. *Silverberg* obviously did not agree. Also, it is tangible property which is covered by M.C.L.A. § 600.5805(8). This case is very much like a case cited in *Silverberg* which held that "(t)he amended cross-claim is nothing more than common law fraud allegations clothed in the season's fashion: RICO." *Steven Operating Inc. v. Home State Savings*, 105 F.R.D. 7, 11 (S.D.Ohio 1984).

Thus, since the last purchase occurred in 1980, the Complaint was within the six year period (to wit, 1985). Moreover, Plaintiff has alleged that he did not know of the fraud until the Internal Revenue Service conducted an evaluation in 1985. Thus, under any of these statutes, his claim is timely. Defendants' contention that Plaintiff should have known about the fraud at an earlier time raises factual questions that cannot be resolved by a motion.

## VI

■ Defendants argue that Plaintiff has not alleged any injury to business or property as required by RICO since he only lost expected tax benefits. However, the expected tax benefits were based on the value of the paintings that Plaintiff had acquired at a cost of hundreds of thousands of dollars in outlays. His alleged injury is this outlay of money for what could be worthless paintings. Such an injury clearly satisfies the requirements of a proprietary nature. Proprietary does not necessarily mean tangible property. Thus, the injury argument fails.

## VII

■ Defendants argue that venue is improper in the Eastern District of Michigan because one of the Purchase Agreements contains a forum selection clause which specifies that a lawsuit based on the Purchase Agreement shall be brought in Harris County, Texas. Both Plaintiff and Defendants agree that the applicable statute regarding the enforceability of a forum selection clause is M.C.L.A. § 600.745.[10] Contrary to Defendants' arguments, M.C.L.A. § 600.745 does not mean that venue is improper in this cause.

This Court notes that only one of the six Purchase Agreements had such a provi-

---

**10.** This Court notes that the result would be no different if Texas law governed this issue or if it was governed by *The Bremen v. Zapata Off Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Under either alternative, the clauses need not be enforced where enforcement is unreasonable. This is such a case.

sion. Equity, as well as an efficient administration of justice, militate against requiring a RICO claim involving six Defendants (and not a claim in contract) to be brought in the location which is specified in a contract with one of the Defendants. Several Michigan statutory exceptions to the enforceability of a forum selection clause appear to apply here under M.C.L.A. § 600.-745. The first exception arises when the court is required by the applicable substantive statute to resolve the dispute. This appears to be such a case. A part of the RICO statute establishes the venue standard: [11]

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent or transacts his affairs.

Inasmuch as the statute says that RICO actions may be brought wherever the transaction occurs, Plaintiff had the right to initiate this action in the Eastern District of Michigan which is obliged to entertain it if all other jurisdictional prerequisites are met. All of the documents were allegedly signed in Michigan. Moreover, it appears that all of the dealings between Lone Star (the company with the Texas venue provision) and Plaintiff occurred in Michigan. Since the federal statute specifically authorizes venue for a RICO action where the transaction occurred, the forum selection clause between Plaintiff and one Defendant need not be enforced.

Another exception to the enforceability of a forum selection clause is where the state chosen would be a substantially less convenient forum. It seems that every transaction between Plaintiff and all other parties occurred in Michigan. Thus, it is reasonable to assume that most of the witnesses would come from Michigan. It would be unfair to deny Plaintiff an opportunity to sue a sixth person in the Eastern District of Michigan when (1) five Defendants can be sued here, and (2) the absence of the sixth Defendant would prejudice his case. Thus, venue is proper.

11. 18 U.S.C. § 1965(a).

Thus, for all of the above reasons, Defendants' Motions to Dismiss are denied, subject to the conditions for amendment which have been previously set forth in the Order.

IT IS SO ORDERED.