**Porter B. WILLIAMSON, Plaintiff,**

v.

**SIMON & SCHUSTER, A DIVISION OF GULF & WESTERN CORPORATION, Defendant.**

**87 CIV 2277 (LBS).**

United States District Court, S.D. New York.

April 17, 1990.

Cooper, Brown & Behrle, P.C., New York City (Richard B. Cooper, of counsel), for plaintiff.

Sharfman, Shanman, Poret & Siviglia, P.C., New York City (James A. Shanman, Neil H. Reig, of counsel), for defendant.

## OPINION

SAND, District Judge.

This action involves a dispute between an author and a publisher arising under their publishing agreement. The publisher moves for partial summary judgment with respect to the author's claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a), for breach of contract and for copyright infringement. For the reasons stated below, defendant's motion is granted with respect to the RICO claim, but denied with respect to the claims for copyright infringement and breach of contract.

### I. *Background*

On May 15, 1982, defendant Simon & Schuster, a publisher, entered into a written publishing agreement ("publishing agreement") with plaintiff Porter B. Williamson, an author. Under the agreement, defendant was to publish a book written by plaintiff entitled *Patton's Principles, A Handbook For Managers Who Mean It!* Plaintiff was paid $4,000 as an advance against royalties which might accrue on sales of the book, and in November 1982, defendant published a single edition of the book. The parties disagree as to what type of edition defendant actually published, with plaintiff claiming that it was a "trade edition" and defendant suggesting it was a "quality paperback edition."

On November 21, 1983, plaintiff sought by letter to revoke defendant's license to publish his book on the basis of various alleged breaches of the publishing agreement. Plaintiff subsequently commenced this action, asserting claims for copyright infringement, breach of contract, for an accounting, and for injunctive relief. Plaintiff's Second Amended Complaint included

claims for rescission based upon fraudulent inducement and infringement in consequence of rescission. In an "Amendment to the Second Amended Complaint," plaintiff also added a RICO claim. On August 7, 1989, this Court denied defendant's motion to dismiss the RICO claim "without prejudice to the renewal of the issue in a motion for summary judgment after completion of discovery." *Williamson v. Simon & Schuster*, 87 Civ. 2277 (LBS) (S.D.N.Y. August 7, 1989) (memorandum endorsement).

## II. *Discussion*

Fed.R.Civ.P. 56(c) stipulates that a motion for summary judgment shall be granted if there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Materiality of facts is determined by the applicable substantive law, and a genuine dispute exists over such a fact if a reasonable jury viewing the evidence could decided in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### A. *RICO Claim*

Defendant, citing this Court's decision in *Vista Co. v. Columbia Pictures Indus. Inc.*, 725 F.Supp. 1286 (S.D.N.Y.1989), seeks summary judgment on plaintiff's claim under the RICO statute, 18 U.S.C. § 1962(a).[1] In *Vista* we held that Section 1962(a)[2] required a causal link between the investment of income or proceeds derived from the pattern of racketeering and the injury. *Id.* at 1299–1300. We also rejected the plaintiffs' argument in that case that they had met this causation standard by alleging that the defendant, which was also the RICO enterprise, had used the income derived from its pattern of racketeering to assist in its own general operations, thereby permitting it to continue its pattern of racketeering and further injure the plaintiff. Plaintiff in this case alleges that:

> Defendant ... used such income indirectly (and as part of its general funds) to pay salaries of ... employees who carried out the operations of such schemes, and also to pay its general business expenses (such as postage and rent) necessary to operations of such schemes, all in violation of ... § 1962(a).

> Plaintiff was injured ... by the operation of such schemes. Plaintiff was injured ... by reason of the facts alleged in the preceding paragraph because the operation of the schemes was facilitated and made possible by such payment of such salaries and business expenses.

Amendment to Second Amended Complaint ¶¶ 104 & 105. While plaintiff's allegations here are more specific than those in *Vista*, plaintiff is attempting to meet the causation requirement in precisely the same way.

In this circuit, there is no longer any doubt that "to state a claim for civil damages under § 1962(a), a plaintiff must allege injury from the defendants' invest-

---

**1.** This Court denied defendant's earlier motion to dismiss "without prejudice," concluding that it was "the prudent course to ... deny the motion without prejudice to the renewal of the issue in a motion for summary judgment after completion of discovery." Contrary to plaintiff's suggestion, however, whether or not discovery has in fact contributed to resolution of this issue has no bearing on our willingness to consider the issue now. Defendant's earlier motion was denied without prejudice because this Court recognized that "a number of decisions have been rendered all of which appear to expand the reach of that unusual [RICO] statute ...." The Court now believes that the issue raised by defendant's motion is ripe for resolution.

**2.** Section 1962(a) provides that:
It shall be unlawful for any person who has received any income derived, directly or indi-

rectly, from a pattern of racketeering activity ... in which such person has participated as a principal ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities which affect, interstate or foreign commerce.
18 U.S.C. § 1964(c) provides a cause of action for: "[a]ny person injured in his business or property by reason of section 1962." In *Ouaknine v. MacFarlane*, 897 F.2d 75 (2d Cir.1990), the Court of Appeals interpreted § 1964(c) to require that plaintiff allege injury "by reason of" the conduct constituting the violation of § 1962(a), the investment of racketeering income in an enterprise.

ment of racketeering income in an enterprise." *Ouaknine v. MacFarlane*, 897 F.2d 75 (2d Cir.1990). This Court adheres to the view it expressed in *Vista* that when a defendant is also the RICO enterprise and a racketeering scheme is not the enterprise's sole purpose, investment of the proceeds from the pattern of racketeering for general operations is too attenuated a causal connection to satisfy Sections 1962(a) and 1964(c). Under these circumstances, the real cause of the injury remains the racketeering acts, not the investment of the proceeds in the enterprise. Moreover, in order for there to be a violation of Section 1962(a) when a defendant is also a RICO enterprise, the defendant will by definition have to use or invest the proceeds of the pattern of racketeering in the acquisition of or operation of itself. Once it is established that there is a pattern of racketeering and that the defendant is investing the proceeds from the racketeering in its own general operations, any three acts of racketeering would automatically fulfill the causation requirement for Section 1962(a). The first two acts would establish a pattern, and the second act would "cause" the third by further financing the racketeering activity that is causing injury to the plaintiff. Where the defendant/enterprise has engaged in a pattern of racketeering activity and invested the proceeds of such activity, the causation requirement for Sections 1962(a) & 1964(c) would in effect be rendered meaningless. While use of racketeering proceeds for general overhead purposes of an enterprise not engaged solely in illegal activity may be encompassed by the language of Section 1962(a), it does not satisfy the Second Circuit's holding in *Ouaknine* that to state an actionable claim under Section 1964(c) plaintiff must allege injury by reason of the defendant's violation of Section 1962(a). Section 1962(a) standing alone does not state a cause of action. To state a cause of action, plaintiff must satisfy the requirements of both Sections 1962(a) and 1964(c).

Other courts have reached this same conclusion with respect to Section 1962(a) and have implicitly identified other instances where the causation requirement would be met. *See DeMuro v. E.F. Hutton*, 662 F.Supp. 308, 308–09 (S.D.N.Y.1986) (allegation that brokerage house, the defendant/enterprise, invested racketeering proceeds in one of its offices to pay the racketeer/brokers' commissions and finance general office expenses not sufficient to meet causation requirement; such a holding would "turn every churning case into a RICO case"); *In re Rexplore, Inc.*, 685 F.Supp. 1132, 1141–42 (N.D.Ca.1988) (argument that payment of fees and commissions by brokerage house from racketeering proceeds kept brokerage house alive and permitted it to injure plaintiffs was merely "restatement that predicate acts of fraud caused injury"); *Galerie Furstenberg v. Coffaro*, 697 F.Supp. 1282, 1288–89 (S.D.N.Y.1988) (even if investment in itself permitted defendant to continue to injure buyers of counterfeit art, injury caused by the production and sale of counterfeit artwork, not by investment of proceeds from this sale in enterprise); *cf. Snider v. Lone Star Art Trading Co., Inc.*, 659 F.Supp. 1249, 1256 (E.D.Mich.1987) (where defendant/enterprise existed only for the purpose of committing the fraud and was not a separate legal entity, money reinvested in enterprise could be said to have caused injury).[3]

## B. *Breach of Contract Claim*

Plaintiff claims that defendant breached the publishing agreement by paying smaller royalties than were provided for in the agreement and by calculating royalties from "special sales" of the book on the basis of a percentage of the net amounts received rather than from the catalogue retail price. Defendant, for its part, argues that plaintiff's claims are inconsistent with the plain meaning of the publishing agreement's terms.

---

**3.** *But see Long Island Lighting Co. v. General Electric Co.*, 712 F.Supp. 292, 297 (E.D.N.Y. 1989) (allegation that funds gained through defendant/enterprise's fraudulent misstatements about product plaintiff eventually purchased enabled defendant to enhance its ability to market that product met causation requirements).

■ While both parties agree that the publishing agreement sets different royalty schedules for "quality paperback editions" and "trade editions" and that plaintiff received royalties based on the quality paperback edition schedule, they disagree over which type of edition defendant actually published. The publishing agreement defines "trade editions" as "the first edition of the Literary Work in book form" and "quality paperback edition" as ". . . other editions of the Literary Work at less than the catalog retail price of the most recent trade edition, but at more than the catalog retail price of any mass market paperback reprint edition which has been authorized." Publishing agreement ¶¶ 2 & 5. Though defendant insists that it published a quality paperback edition of plaintiff's book, *see* Defendant's Rule 3(g) Statement ¶ 3; Affidavit of Paul Crystal ¶ 2, it fails to establish to the extent required to prevail on a motion for summary judgment either that the *edition* it published was not the "first edition in book form" or that the edition was "at less than the catalog retail price of the most recent trade edition." Defendant also fails to establish for these purposes that a "trade edition" is anything more than the first edition of a literary work in book form.[4]

While plaintiff's complaint appears to indicate that his book was printed by someone other than defendant prior to his having entered into the agreement with defendant, defendant has not established for the purposes of this motion that it considered this printing a "first edition" within the meaning of the publishing agreement. Paragraph 5 of plaintiff's complaint does appear to suggest that an "original printed work" existed prior to the execution of the publishing agreement.[5] However, defendant offers no evidence to suggest that this "original printed work" would be considered a "first edition" or even to clarify what is generally considered a "first edition" according to industry custom and practice. Moreover, plaintiff offers a letter suggesting that defendant itself did not consider this earlier printing to be a first edition. The May 8, 1987 letter from Eric Rayman, the then-Vice President and Senior Counsel of defendant, to plaintiff's counsel indicates that "[t]he first edition of PATTON'S PRINCIPLES was published in November 1982." Reply Declaration in Opposition, Exhibit 1 at 1. November 1982 was of course when defendant published its edition of plaintiff's book.

■ Defendant is also not entitled to summary judgment on plaintiff's claim that defendant breached the publishing agreement by calculating royalties from "special sales" of the book on the basis of a percentage of the net amounts received, rather than from the catalogue retail price. Paragraph 70 of the publishing agreement provides that: "[o]n the exercise of quality paperback reprint edition or textbook edition rights under one of its own imprints royalties . . . shall be paid to the Author at the following rates based on . . . 5% of the net amount received for copies sold at special discounts including copies sold in . . . other special sales . . ." At the same time, a different typewritten provision included earlier in the agreement reads: "[The parties] agree to the following special provisions, which shall prevail over any conflicting provisions in the Basic Agreement: 1. In computing royalties payable to the Author, the suggested catalogue retail price on all copies sold shall be the basis of such

---

4. A typewritten provision added at the beginning of the publishing agreement provides:

    [The parties] agree to the following special provisions, which shall prevail over any conflicting provisions in the Basic Agreement: . . . 2. Publisher may publish a quality paperback edition of the Work prior to or simultaneously with any hardcover edition. Publisher may in its sole discretion refrain from publication of a hardcover edition.

    Publishing agreement at iii. The evidence in the record does not establish that all "trade editions" are hardcover editions, and nowhere in its moving papers does defendant argue that this is the case. As a result, this provision does not assist in clarifying which type of edition defendant actually published, but indicates only that defendant retained the option of publishing a quality paperback edition first.

5. Paragraph 5 reads: "[p]laintiff is the author and registered owner of the copyright of an original printed work entitled *General Patton's Principles.*"

computation. The suggested cover price ... shall not be used ..." [6] *Id.* at iii. Even if this typewritten provision, which seems to have been inserted into a standard form agreement specifically by these parties, did not nullify ¶ 70, defendant has not established that ¶ 70 was applicable. Indeed, as was discussed earlier, the evidence in the record does not establish that defendant published a quality paperback reprint edition of plaintiff's book, and defendant has not argued that it published a textbook edition.

### C.  *Copyright Infringement Claim*

Plaintiff's third claim alleges that he revoked defendant's license under the copyright to publish his book as of November 22, 1983 and that defendant infringed upon his copyright by continuing to publish after that date. Under the publishing agreement, plaintiff had the right to revoke defendant's right to publish his book in the event of a "substantial breach of th[e] agreement and [failure] to remedy the breach within 60 days." Publishing agreement ¶ 93. Defendant argues that none of the breaches of the agreement alleged by plaintiff was substantial enough to warrant rescission. Plaintiff counters that the agreement gave him the power to "revoke" defendant's publication rights, not to seek rescission of the agreement, and that defendant's fraud alone was sufficient under ¶ 93 to warrant revocation or rescission. The Court agrees with plaintiff that summary judgment is not appropriate with respect to plaintiff's copyright infringement claim.

Defendant does not contend that plaintiff's allegations of fraudulent misrepresentations, if proven, would not be sufficient to establish that defendant substantially breached the agreement within the meaning of ¶ 93. *See e.g. Nolan v. Sam Fox Publishing Co.*, 499 F.2d 1394, 1397 (2d Cir.1974) (showing of fraud would certainly merit rescission). Although defendant asserts that it is "confident that the evidence at trial will show that [plaintiff's fraud] claims are meritless," Defendant's Memorandum at 8, it does not seek summary judgment with respect to those claims, apparently conceding that triable issues of material fact remain. Plaintiff alleges a fraudulent scheme to pay royalties based upon other than the suggested catalogue retail price, to withhold from authors royalties for books returned by stores and resold, to deduct from royalties excessive noninterest bearing reserves, and to misclassify certain royalties due authors as being foreign sales. Complaint ¶¶ 65–80. Defendant has made no effort to demonstrate the absence of any issue of material fact with respect to the allegedly fraudulent misrepresentations and or that it is entitled to judgment as a matter of law on these claims.

The Court finds no merit to defendant's objection that plaintiff's copyright infringement claim does not allege fraudulent inducement or incorporate any of the factual allegations in Counts Four and Five.[7] Based upon this pleading defect, defendant argues that the Court should disregard the fraud claims when ruling upon its summary judgment motion. However, on a summary judgment motion, the Court will examine all the pleadings to determine whether summary judgment will be granted and is obliged to "take account of the entire setting of the case on a Rule 56 motion." Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2721.

**6.**  Defendant suggests that this clause read as a whole could mean only that when a price is to be used to calculate royalties, it will be the "suggested catalogue retail price." The Court does not agree that this clause is unambiguous.

**7.**  That plaintiff asserted some of the allegations of fraudulent misrepresentation well after the filing of his first complaint does not conclusively establish that defendant's allegedly fraudulent representations were not the motivation for plaintiff's revocation. All the allegedly fraudulent representations were contained in the publishing agreement and were therefore clearly made before plaintiff revoked defendant's right to publish, and defendant has not established that plaintiff learned of their falsity after his revocation. It should be noted that defendant has not sought dismissal of any part of the *fraud claims* on the ground that they are redundant restatements of the breach of contract claims.

### III. *Conclusion*

Defendant's motion for summary judgment is granted with respect to plaintiff's claim under RICO, 18 U.S.C. § 1962(a), but denied with respect to the claims for breach of contract and copyright infringement. The parties are to provide a letter indicating the status of this case by May 2, 1990.

SO ORDERED.