Patricia J. KACZMAREK,
et al., Plaintiffs,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,
Defendant.

No. 98 Civ. 0677 (CLB).

United States District Court, S.D. New York.

Dec. 10, 1998.

627

Gary Weinstein, Weinstein, & Associates, New York City, for plaintiffs.

Daniel Slifkin & Matthew Kaplan, Cravath, Swaine & Moore, New York City, Kenneth B. Wildstein, IBM Corp., White Plains, NY, for defendant.

*MEMORANDUM & ORDER*

BRIEANT, District Judge.

By motion filed September 1, 1998 and heard on October 16, 1998 and December 10, 1998, defendant IBM moves to dismiss Count III of the complaint for failure to state a claim on the ground that plaintiffs have failed properly to plead "investment injury" as required to state a claim for violation of section 1962(a) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a). Plaintiffs submitted opposing papers, arguing that the complaint also alleges violations of 18 U.S.C. §§ 1962(b) and (c). IBM filed reply papers on October 14, 1998.

## BACKGROUND

Ms. Kaczmarek and the other plaintiffs filed this proposed class action January 30, 1998 on behalf of all persons and entities who from June 1994 to the present purchased an IBM Aptiva, ThinkPad, or PC 700 with an "Mwave" digital signal processor ("DSP"), and were thereby damaged economically. IBM allegedly stated and advertised that the Mwave provided advanced, integrated sound and modem functions on a single DSP. Plaintiffs claim that the Mwave is unable to provide the features and functions represented and warranted by IBM due to an inherent and incurable hardware limitation. IBM offered to fix or upgrade the Mwaves but, according to plaintiffs, IBM's fixes or upgrades not only failed to solve the problems but created new problems. IBM then began to offer informal compensation or replacement products to individual customers until the requests for compensation proliferated, at which time IBM ceased compensating customers. IBM allegedly threatened customers who had received informal compensation with termination from free access to an Internet forum if they disclosed that they had received compensation.

Count III of the complaint asserts a claim for violation of 18 U.S.C. § 1962(a). Plaintiffs claim (1) that "IBM together with firms and individuals who are IBM sales and marketing representatives as well as third-party IBM authorized dealers, distributors, and resellers" (2d Amended Complaint ¶ 167) constitute an enterprise (the "Enterprise"); (2) that this Enterprise engaged in interstate commerce; (3) that defendant IBM received income from a pattern of racketeering activity in which IBM committed mail and wire fraud; and (4) that IBM invested a portion of the income and/or proceeds to establish and operate the Enterprise. Plaintiffs also claim that they were injured by reason of such investment and therefore have a private right of action under 18 U.S.C. § 1964(c).

Defendant asserts that plaintiffs have not alleged injury from investment, only injury from the predicate acts of mail and wire fraud, and that accordingly, plaintiffs fail to state a claim under § 1962(a).

Plaintiffs' opposition papers assert that the complaint does allege injury from investment of illicit proceeds in IBM's business and that the complaint actually alleges violations of §§ 1962(b) and (c) in addition to § 1962(a). Plaintiffs claim that the absence of a reference to §§ 1962(b) & (c) in the complaint was due to a typographical error and the Court will treat the claim as amended accordingly. According to plaintiffs, §§ 1962(b) and (c) do not require proof of investment injury and thus even if the complaint fails to allege investment injury, it nevertheless sufficiently alleges RICO violations under these sections. Defendant argues in its response papers that plaintiffs fail to state a claim for violation of §§ 1962(b) & (c) as well.

### DISCUSSION

*Section 1962(a)*

RICO section 1962(a) provides:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in ... interstate or foreign commerce.

Our Court of Appeals has held that "to state a civil claim under § 1964(c) for a violation of § 1962(a), a plaintiff must allege injury 'by reason of' defendants' investment of racketeering income in an enterprise." *Ouaknine v. MacFarlane*, 897 F.2d 75, 82–83 (2d Cir. 1990). "The essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering income." *Id.* at 83.

█ Plaintiffs fail to plead any facts that indicate an injury caused by IBM's use or investment of the alleged proceeds of racketeering activity.[1] In *Ouaknine*, the Court of Appeals upheld the district court's dismissal of the § 1962(a) RICO claim because the plaintiff "alleged no facts asserting injury by reason of defendants' investment of racketeering income." *Id.* at 83. Plaintiffs complaint alleges that the Mwave is defective, that IBM misrepresented the capabilities of the Mwave, and that plaintiffs were injured by purchasing and using the Mwave. It does not and apparently cannot allege that plaintiffs were injured by IBM's investment or use of the proceeds of the sales of the Mwave in the establishment or operation of the "Enterprise."

Plaintiff argues that its allegation that proceeds "from sales of Mwaves to other computer manufactures to fund its manufacturing, advertising, marketing and sales efforts of the subject IBM computers with Mwaves to plaintiffs ... satisfies ... section 1962(a)." Plaintiffs' argument is unpersuasive. Mere reinvestment of racketeering income into the same racketeering enterprise that generated the income "does not satisfy the Second Circuit's holding in *Ouaknine* " because "investment of the proceeds from the pattern of racketeering for general operations is too attenuated a causal connection to satisfy sections 1962(a) and 1964(c)." *Williamson v.*

---

**1.** For all that appears, the net profits, if any, from sales of Mwave were brought down to the bottom line and distributed to shareholders or added to corporate surplus along with the proceeds of all other business units or product lines of IBM.

*Simon & Schuster,* 735 F.Supp. 565, 567–68 (S.D.N.Y.1990) (Sand, J.). Under these circumstances, "the real cause of the injury remains the racketeering acts, not the investment of the proceeds in the enterprise." *Id.*

Plaintiffs' conclusory allegations of injury from IBM's investment of the illicit proceeds are likewise insufficient. *See NRB Indus., Inc. v. R.A. Taylor & Assocs.,* 1998 WL 3638, at *2 (S.D.N.Y. Jan.7, 1998) (dismissing § 1962(a) claim because "the sole allegation in the complaint regarding any purported 'investment injury' is the conclusory allegations [of such injury]" and "[a] mere conclusion is insufficient to support a complaint") (Rakoff, J.); *Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F.Supp. 276, 283–84 (S.D.N.Y.1991) (dismissing § 1962(a) claim because plaintiffs "alleged that illicit income was used or invested in an enterprise without explaining how such use or investment caused the injuries alleged.") (Sweet, J.).

*Section 1962(b)*

■ Plaintiffs assert that the complaint also alleges a violation of 18 U.S.C. § 1962(b), although this subsection is not specifically mentioned. So treated, plaintiffs nevertheless fail to state a claim under § 1962(b). Section 1962(b) provides:

It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in ... interstate or foreign commerce.

Our Court of Appeals has held that, just as § 1962(a) requires "investment injury," § 1962(b) requires an "acquisition injury" or "maintenance injury." *See Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1063 (2d Cir. 1996). The plaintiff must allege injury "by reason of" a defendant's "acquisition or maintenance" of an "enterprise" through a pattern of racketeering activity, and the injury caused by the acquisition or maintenance must be "distinct from the injuries resulting from predicate acts." *Id.* at 1062–63. The *Discon* court upheld the district court's dismissal of the § 1962(b) claim because the plaintiff did "not alleged any injury stemming from the 'acquisition or maintenance' of NYTel by NYNEX and MECo, only injuries

resulting from the commission of predicate acts." *Id.* at 1063.

■ Plaintiffs allege that they were injured by purchasing and using IBM's defective product, not by IBM's acquisition or maintenance of the Enterprise. First, IBM did not acquire anything. Second, plaintiffs do not explain how IBM allegedly "maintained" this enterprise of manufacturers, dealers, and resellers through its fraudulent sales and cover-up. Finally, plaintiffs do not allege *any* facts demonstrating how IBM's maintenance, if any, of this Enterprise injured them. It is insufficient to suggest that the *existence* of IBM and third party distributors injured plaintiffs. Plaintiffs' allegations do not support a claim under § 1962(b).

*Section 1962(c)*

■ Plaintiffs assert that the complaint also alleges a violation of 18 U.S.C. § 1962(c). So treated, plaintiffs fail to state a claim under § 1962(c) as well. Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in ... interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ....

To state a claim for violation of § 1962(c), the plaintiff must (1) distinguish the "person" from the "enterprise" and (2) allege facts demonstrating that defendant actually conducted the affairs of that enterprise.

In *Discon,* the court upheld the district court's dismissal of the plaintiff's § 1962(c) RICO claim because the plaintiff failed to distinguish the "person" from the "enterprise." *Id.* at 1064. The "enterprise" alleged in *Discon* consisted of three separate corporations, one of which was the defendant "person." The court found however, that because the three corporations formed a "unified corporate structure," one corporation could not be distinguished from the enterprise as a whole. *Id.* To the extent plaintiffs claim that the enterprise whose affairs IBM conducted consisted of IBM and its

employees or subsidiaries or affiliates, plaintiffs' claim fails under *Discon.*

To the extent plaintiffs allege that the enterprise also included third party manufacturers, dealers and resellers, plaintiffs have failed to distinguish this association of entities from the typical and ordinary participants who act separately for the purpose of distributing any product.

> [W]here a large, reputable manufacturer deals with its dealers and other agents in the ordinary way, so that their role in the manufacturer's illegal act is entirely incidental, differing not at all from what it would be if these agents were the employees of a totally integrated enterprise, the manufacturer plus its dealers and other agents ... do not constitute an enterprise within the meaning of [RICO].

*Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 228 (7th Cir.1997) (Posner, J.). Plaintiffs thus fail to allege an enterprise separate from the defendant.

Assuming for the argument that plaintiffs have alleged sufficiently that IBM is a corporate "entity associated with a group of which it is but a part," *Cullen v. Margiotta*, 811 F.2d 698, 730 (2d Cir.1987), and therefore a person distinct from the Enterprise, plaintiffs nevertheless fail to state a claim for violation of § 1962(c) because the complaint does not sufficiently allege that IBM conducted or participated in conducting the Enterprise's affairs. The Supreme Court in *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), rejected the definition of "conduct" as "carry on," stating that " 'conduct' means to lead, run, manage, or direct." *Id.* at 177, 113 S.Ct. 1163. Thus the Court adopted the "operation and management" test for determining liability under § 1962(c). *Id.* at 179, 113 S.Ct. 1163. Under *Reves,* plaintiffs must therefore show that the defendant IBM, at the very least, "participate[d] in the operation or management of the enterprise itself." *Id.* at 185, 113 S.Ct. 1163. The Court also made clear that the defendant must conduct or participate in the conduct of "the '*enterprise's* affairs,' not just their *own* affairs." *Id.* at 185, 113 S.Ct. 1163 (emphasis in original).

Plaintiffs here allege that IBM sold a defective product through an enterprise consisting of IBM, its sales and marketing representatives, and third party distributors. Plaintiffs allege nothing more than the ordinary methods by which a product finds its way from the manufacturer to the end user. Plaintiffs do not describe the role, if any, of IBM in the operation or management of this Enterprise. IBM was simply conducting its own "affairs" in distributing its product, through normal commercial channels. Thus, under *Reves,* plaintiffs have failed to state a claim for violation of § 1962(c).

In *El–Issa v. Compaq Computer Corp.,* 1997 WL 790730 (N.D.Ill.Dec.19, 1997), the court held that allegations almost exactly the same as those here failed to state a claim under § 1962(c). In *Compaq,* Compaq allegedly induced class members to purchase Compaq computers through a network of third-party retailers by means of fraudulent advertisements and warranties. The court held that the complaint failed to allege that Compaq was conducting the affairs of an enterprise distinct from Compaq: "Compaq used the retailers only to further its own 'affairs,' which included selling more Compaq computers." *Id.* at *5. In addition, "[e]ven if the complaint had properly identified an enterprise, .... Compaq could not and did not conduct the retailer's affairs because ... the retailers sell products that compete directly with Compaq and are not controlled by Compaq." *Id.*

Accordingly, Count III of the complaint, treated as amended (*see* transcript of Hearing of December 10, 1998), is dismissed for failure to state a claim upon which relief may be granted.

The Court declines at this time to make the finding contemplated by Rule 54(b), Fed. R.Civ.P.

SO ORDERED.