26 F.3d 131
 RICO Bus.Disp.Guide 8577
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Frances NEELY, Executrix of the Estate of Lloyd D. Neely and
Royal Vista, Inc., a California corporation,
Plaintiffs-Appellees,
v.
Frank CAMPOS; Calvin Reynolds; Roger Gugger; Gold Capital
Investments Corp., a California corporation; Sterling
Medical Systems, Inc., a Utah corporation; Merrill Lynch,
Pierce, Fenner & Smith, Incorporated; Premwest, Inc., a
California corporation, Defendants-Appellants.
 No. 92-56197.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 3, 1994.
Decided May 27, 1994.
 
 1
 Before: D.W. NELSON, REINHARDT, and BRUNETTI, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Defendants/Appellants appeal the district court's judgment following a bench trial finding them liable under the Racketeer Influenced & Corrupt Organizations Act ("RICO") (18 U.S.C.A. Secs. 1961-1968 (West 1988 & Supp.1993)) and liable for fraud. The court awarded monetary damages of $5,000 plus attorney's fees. We reverse the decision of the district court on the civil RICO cause of action and affirm the decision of the district court on the fraud cause of action.
 
 FACTS AND PRIOR PROCEEDINGS
 
 4
 Appellees in this action are Frances Neely, executrix of the estate of Lloyd O. Neely ("Neely"), and Royal Vista, Inc., a corporation organized and existing under the laws of the State of California with its principal place of business in Chula Vista, California. Neely was the owner of all of the stock of Royal Vista, Inc., which was the owner of Royal Vista Inn, a hotel in Chula Vista, California.
 
 
 5
 Appellants in this action are Calvin Reynolds ("Reynolds") and Premwest, Inc. ("Premwest"), a corporation organized under the laws of and doing business in the State of California. Reynolds owns 100% of Premwest's stock.
 
 
 6
 In approximately July, 1990, an asset exchange took place between Sterling Medical Systems, Inc. ("Sterling"), a Utah corporation which at all relevant times was doing business in the State of California, and Gold Capital Investment Corporation ("Gold"), a corporation organized under the laws of and doing business in the State of California. Frank Campos ("Campos") owned and controlled 100% of Gold. Reynolds arranged a transaction whereby Sterling issued five million shares of common stock and presented it to Gold in exchange for fifty thousand shares of its preferred stock with a three percent accumulative dividend, payable semi-annually by Gold.
 
 
 7
 Campos agreed to pay Reynolds $400,000 for bringing him this investment and for acting as a consultant during this transaction and other non-related business. Reynolds was to receive $150,000 for the Sterling transaction alone. Since Campos failed to pay Reynolds the agreed upon fee, he pledged the Sterling stock as security for his $150,000 debt to Reynolds.
 
 
 8
 In an allegedly related transaction, Campos told Neely that he, through his corporation, Gold, would purchase the stock of Royal Vista, Inc. Campos was to pay Neely a $700,000 cash down payment, with the hotel stock and property to secure the balance of the purchase price. Campos told Neely that he needed to recover the pledged Sterling stock in order to write a negotiable check to Neely for $700,000. Campos told Neely that once he recovered it, he would deposit the Sterling stock in his Merrill Lynch account to provide a line of credit from which he could draw a check for the $700,000 down payment.
 
 
 9
 There was evidence presented at trial that Sterling had canceled its stock certificate and that both Campos and Reynolds knew this. There was also evidence presented at trial that both Reynolds and Campos thought the cancellation was invalid and that they believed that the stock had value. The district court found that Roger Grugger, a Merrill Lynch employee, told Campos and Neely that the Sterling stock was worth over $3,000,000. The district court also found that the Sterling stock was restricted Sec. 144 stock which could not be hypothecated or conveyed; therefore, it could not be used to collateralize a line of credit.
 
 
 10
 Reynolds agreed to release the Sterling stock to Campos if Campos paid him $50,000. Campos relayed this information to Neely and told him that if he, Campos, acquired the Sterling stock, he would put it into his Merrill Lynch account. He would then write Neely a $700,000 check on a line of credit from Merrill Lynch based on the stock certificate. Neely agreed to participate in this transaction as follows: Neely deposited $20,000 in Campos' Merrill Lynch account from which Campos gave Reynolds a $5,000 cashier's check. Neely, in addition, gave Reynolds a note for $45,000 secured by a deed of trust on the Royal Vista Inn and due in four days. Reynolds then surrendered the five million shares of Sterling stock to Campos.
 
 
 11
 Campos deposited the Sterling stock with Merrill Lynch but was never given a line of credit. Despite this, Campos wrote checks totalling $700,000 to Neely on the account for the down payment on the Royal Vista, Inc. stock in exchange for which Neely transferred ownership of the Royal Vista Inn to Campos.
 
 
 12
 Campos used his control of Royal Vista, Inc. and his possession of the hotel for personal financial gain and stripped the hotel and its owner of valuable assets. Campos incurred debt, did not pay payroll, bills, first mortgage payments, or taxes, and appropriated assets of the hotel for his own personal use.
 
 
 13
 Campos' $700,000 in checks bounced, and Campos initially refused to return possession of the hotel, promising to make the checks good. Forty-five days after Neely conveyed the hotel and stocks to Campos, Campos turned over possession of the hotel to Neely and returned the Royal Vista, Inc. stock.
 
 
 14
 On these facts, the district court found Reynolds and Premwest, among others, liable to Neely for civil RICO and fraud. The district court awarded monetary damages of $5,000 plus attorney's fees (pursuant to the RICO statute) against Reynolds and Premwest, concluded that Reynolds and Premwest defrauded Neely in acquiring a deed of trust for the Royal Vista Inn from Neely, and ordered rescission. Reynolds and Premwest appeal from the district court's decision, contending that there was insufficient evidence supporting the district court's finding of liability for the RICO and fraud violations.
 
 I.
 RICO Claim
 
 15
 The district court found Reynolds and Premwest liable for civil RICO based upon predicate acts of mail, wire, and securities fraud and upon its finding of a "pattern of racketeering activity." Reynolds and Premwest argue that the district court's findings are not supported by sufficient evidence. We reverse the trial court's findings of liability under RICO because the element of continuity is lacking. Therefore, we need not review the district court's determination that Reynolds committed the RICO predicate acts.
 
 
 16
 We review the district court's findings of fact under the clearly erroneous standard and give due regard to the opportunity of the trial court to judge the credibility of witnesses. Fed.R.Civ.P. 52(a); Brooker v. Desert Hospital Corp., 947 F.2d 412, 415 (9th Cir.1991); Rozay's Transfer v. Local Freight Drivers, Local 208, 850 F.2d 1321, 1326 (9th Cir.1988), cert. denied, 490 U.S. 1030 (1989). The clearly erroneous standard applies to findings the district court adopts from proposed findings submitted by the parties. Anderson v. Bessemer, 470 U.S. 564, 571-73 (1985); Barnett v. Sea Land Serv., Inc., 875 F.2d 741, 745 (9th Cir.1989). The district court's interpretation of the RICO pattern requirement is a ruling of law which we review de novo. Ticor Title Ins. Co. v. Florida, 937 F.2d 447, 450 (9th Cir.1991).
 
 
 17
 In H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989), the Supreme Court spoke extensively about RICO's pattern requirement. The Court explained the nature of the pattern element by describing its limits: "Congress ... intend[ed] a more stringent requirement than proof simply of two predicates, but also envision[ed] a concept of sufficient breadth that it might encompass multiple predicates within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity." Id. at 237. To prove a pattern of racketeering activity, the plaintiff must show that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." Id. at 239 (emphasis in original).
 
 
 18
 Continuity can refer "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id. at 241. "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." Id. at 242. If the action is brought before continuity can be established in this way, liability can be predicated on a threat of continuity.
 
 
 19
 The Court stated that the determination of whether there is a threat of continued criminal activity is fact sensitive, but provided some examples of how the continuity element might be satisfied. The Court stated that it would find continuity if:
 
 
 20
 (1) the related predicate acts themselves involve a distinct threat of long-term racketeering activity; or
 
 
 21
 (2) the predicate acts or offenses are part of an ongoing entity's regular way of doing business, whether the entity exists for a legitimate or criminal purpose.
 
 
 22
 Id. at 242-43.
 
 
 23
 Our decisions applying H.J. Inc. have interpreted it fairly narrowly. In Religious Technology Center v. Wollersheim, 971 F.2d 364 (9th Cir.1992), we found that appellants had failed to allege a "pattern of racketeering activity." The defendants had a single goal of prosecuting a state tort suit, and we concluded that there was no threat of activity continuing beyond the conclusion of that suit. As the alleged activity continued over a six-month period at most, we further found that appellants had failed to allege a series of related predicate acts extending over a "substantial" period of time. We stated that we had found no case in which a court had held the requirement to be satisfied by a pattern of activity lasting less than a year, and we cited several cases which held that criminal activity spanning anywhere from three to eight months was insufficient to establish continuity. We emphasized RICO's concern with long-term criminal conduct.
 
 
 24
 In River City Markets v. Fleming Foods West, 960 F.2d 1458 (9th Cir.1992), the plaintiffs presented circumstantial evidence of defendants' breaking their promises over a period of approximately one month. We stated that "evidence of a pattern of breach of contract activity spanning just one month, even when embellished by the familiar 'racketeering,' is not sufficient to establish a violation of RICO." Id. at 1464.
 
 
 25
 In U.S. v. Dischner, 974 F.2d 1502, 1510 (9th Cir.1992), cert. denied, 113 S.Ct. 1290 (1993), we found the continuity element satisfied because the acts were committed over a substantial period of time (about three years) and demonstrated a threat of continued racketeering activity.
 
 
 26
 We upheld a RICO judgment based on three episodes of forgery occurring over a thirteen month period in Ticor Title Ins. Co. v. Florida, 937 F.2d 447. We stated that "[t]he frequency of the forgeries suggests that this practice had become a regular way of conducting business at [defendants' business], satisfying the continuity prong of the pattern test." Id. at 450.
 
 
 27
 The predicate acts in this case occurred over a period of nine months. This period of time is not sufficient to establish continuity over a closed period of time. Furthermore, the evidence in this case does not support a finding of a threat of continued illegal activity. The record does not show that the Reynolds-Campos-Neely transaction had become Reynolds' regular way of doing business. Nor does the record establish that Reynolds is a stock manipulator who trades stocks among companies for illegal purposes, and it does not appear that Reynolds had any future plans to similarly defraud other individuals. In short, Reynolds' conduct did not exhibit continuity. Therefore, we hold that Reynolds and Premwest are not liable for civil RICO because Reynolds did not engage in a "pattern of racketeering activity."
 
 II.
 Fraud Claim
 
 28
 To prove fraud, a plaintiff must show that the defendant made false representations of material fact, intended to induce the plaintiff to act, and made the representations with knowledge of, or reckless disregard for, their falsity, and that the plaintiff justifiably relied upon those false representations to his or her detriment. Bulgo v. Munoz, 853 F.2d 710, 716 (9th Cir.1988). The district court, in the instant action, found that Reynolds made certain fraudulent statements and omissions of material facts, which Neely reasonably believed and relied upon to his detriment. We review the district court's findings of fact for clear error, and we review de novo the district court's conclusions of law. Brooker, 947 F.2d at 415; Rozay's Transfer, 850 F.2d at 1326.
 
 
 29
 The specific fraudulent statements and omissions that the district court found Reynolds to have made are:
 
 
 30
 (1) The Sterling stock was valuable and negotiable, such that it could be used to collateralize a line of credit of at least $700,000;
 
 
 31
 (2) Campos, Reynolds, Premwest, and Sterling were independent entities dealing with each other at arms' length;
 
 
 32
 (3) (Omission) Sterling purported to cancel the stock certificate and had the power to do so;
 
 
 33
 (4) (Omission) The Sterling stock was "Section 144" stock and could not be transferred or hypothecated.
 
 The district court found that:
 
 34
 The defendants together concocted the scheme to defraud Neely. They used the pretended arms' length relationship to persuade Neely to part with his money and stock. Campos and Reynolds pretended that the Sterling stock was valuable in order to persuade Neely to pay $5,000 and sign a secured short-term note for $45,000 to Reynolds. The fraud freed the Sterling stock and thus persuaded Neely to give up possession of the Royal Vista, Inc. stock and with it the possession of the Royal Vista Inn Hotel.
 
 
 35
 Neely reasonably believed and relied on the above fraudulent statements and omissions to his detriment. As a direct consequence, he lost $20,000 in cash[ ] [and] signed a deed of trust covering the Royal Vista Inn to collateralize his $45,000 note to Reynolds. Neely also lost $162,000 as a result of the Campos/Gold Capital misappropriating, stealing, and otherwise misusing assets of Royal Vista, Inc. while Campos was in illegal possession of the hotel.
 
 
 36
 The specific statements the district court found Reynolds to have made are not in the trial record; however, the inferences the district court drew were permissible in light of Reynolds' testimony at trial. Therefore, the findings of fact are not clearly erroneous.
 
 
 37
 Reynolds argues that the omissions the district court found can not give rise to a fraud cause of action because he owed Neely no duty of disclosure. Reynolds states that there was no relationship between himself and Neely giving rise to a duty of disclosure because there was "no relation of special trust or confidence" and "the means of knowledge [were] at hand and equally available to both parties." Kneer v. Baruch Corp., 47 Cal.App.2d 601, 604 (1941).
 
 
 38
 However, California law imposes upon every person a duty to avoid injuring the person or property of another. Cal.Civ.Code Sec. 1708 (West 1985). The law also holds a person responsible for injury resulting from any deceit intended to induce others to alter their position to their injury or risk. Cal.Civ.Code Sec. 1709 (West 1985). Deceit includes "[t]he suppression of a fact, by one who ... gives information of other facts which are likely to mislead for want of communication of that fact." Cal.Civ.Code Sec. 1710(3) (West 1985). In addition, the law of contract states that it is fraudulent for a party to a contract having knowledge or belief of a fact to suppress that fact with the intent to deceive another party to the contract or to induce the other party to enter into the contract. Cal.Civ.Code Sec. 1572(3) (West 1982). Such fraud vitiates the consent given to the contract.
 
 
 39
 In interpreting these statutory provisions, California courts have held that a cause of action for non-disclosure of material facts may arise even in transactions which do not involve fiduciary or confidential relations. Thus, in Warner Construction Corp. v. City of Los Angeles, 2 Cal.3d 285, 294 (1970) (citations omitted), the California Supreme Court stated:
 
 
 40
 In transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by plaintiff; (3) the defendant actively conceals discovery from the plaintiff.
 
 
 41
 Here, the district court found that Reynolds knew the Sterling stock had been canceled and that he knew it could not be used to collateralize a line of credit. It is implausible that Neely would have participated in the transaction if he had known what Reynolds failed to disclose about the Sterling stock. Neely transferred the $5,000 cash and the $45,000 note to Reynolds so that Campos could recover the Sterling stock and use it to obtain a line of credit to pay Neely his $700,000. Neely relied on the validity of the Sterling stock in engaging in this transaction with Reynolds, yet Reynolds, who was aware that the stock had been canceled, failed to inform Neely of the stock's cancellation.
 
 
 42
 The district court's findings as to Reynolds' statements and omissions are not clearly erroneous. Reynolds made representations to Neely, yet he failed to disclose facts which materially qualified his statements and which rendered his statements misleading. Reynolds' conduct therefore supports a legal conclusion that he defrauded Neely.
 
 III.
 Conclusion
 
 43
 For the reasons stated herein, we reverse the district court's decision on the RICO cause of action and vacate the award of attorneys' fees. We affirm the decision of the district court on the fraud cause of action and remand for the district court to determine relief consistent with our decision.
 
 
 44
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3