RIVER CITY MARKETS, INC., John Perchaz, Cynthia Perchaz, Howard Dugger, Judith Dugger, Leonard Smith, and Shirley Smith, Plaintiffs–Appellants,

v.

FLEMING FOODS WEST, INC., a California corporation; United Grocers Ltd.; United Fairway Fleming Foods of California, Inc.; Fleming Companies, Inc.; Fleming Finance Co.; Alpha Beta Co., a Delaware corporation; American Stores Co., a California corporation; and Does 1 through 100, inclusive, Defendants–Appellees.

Wesley FONG, Gladys Fong, Ronald Fong, and Times Supermarket, Inc., Plaintiffs–Appellants,

v.

FLEMING FOODS WEST, INC., a California corporation; United Grocers Ltd.; United Fairway Fleming Foods of California, Inc.; Fleming Companies, Inc.; Fleming Finance Co.; Alpha Beta Co., a Delaware corporation; American Stores Co., a California corporation; and Does 1 through 100, inclusive, Defendants–Appellees.

Nos. 90–16623, 90–16624.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1991.

Decided April 3, 1992.

Robert A. Susk and Jeffrey A. Glick, San Francisco, Cal., for plaintiffs-appellants.

Dale E. Fredericks, Darryl M. Woo, and Laura L. Goodman, Sheppard, Mullin, Richter & Hampton, Thomas Peterson, Brobeck, Phleger & Harrison, San Francisco, Cal., for defendants-appellees.

Before: ALDISERT,* GOODWIN, and NOONAN, Circuit Judges.

GOODWIN, Circuit Judge:

Disappointed purchasers of certain Alpha Beta retail grocery stores sought treble damages under RICO for losses they incurred when the stores they bought failed to measure up to representations allegedly made by Alpha Beta and American Stores (Alpha Beta) and by Fleming Foods West, United Fairway, Fleming Companies, and Fleming Finance (Fleming), Alpha Beta's alleged co-conspirator in a fraudulent scheme to unload unprofitable properties on unsuspecting purchasers.

In this consolidated appeal, River City Markets, Inc., et al., and Wesley Fong, et al., challenge the district court's dismissal of their civil RICO claims. Though the

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

district court erred in dismissing plaintiffs' complaints under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, we affirm the result because we conclude that the district court should have granted defendants' summary judgment motions.

## I. BACKGROUND

The plaintiffs originally filed separate actions alleging state law tort, contract and antitrust claims against Alpha Beta and Fleming in Sacramento County Superior Court in 1987. After several amendments, plaintiffs finally attempted to plead violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. Alpha Beta and Fleming promptly removed the cases to federal court pursuant to 28 U.S.C. § 1441(c). After the River City plaintiffs filed their Third Amended Complaint and the Fong plaintiffs filed their Fourth Amended Complaint, the defendants filed separate, concurrent motions to dismiss and motions for summary judgment on the RICO claims and on most of the pendent state law claims.

The district court dismissed both cases pursuant to Fed.R.Civ.P. 12(b)(6), without leave to amend, on the ground that the plaintiffs had failed to plead the existence of a RICO "enterprise" separate and apart from the defendants themselves, as supposedly required by 18 U.S.C. § 1962(c). The court also ruled that because plaintiffs had failed to allege an enterprise under section 1962(c), they also had failed to state a cause of action for conspiracy under section 1962(d). The district court then remanded plaintiffs' pendent state law claims to California superior court.

## II. THE MOTIONS TO DISMISS

In their Ninth and Tenth Causes of Action, plaintiffs claim that Alpha Beta and Fleming conducted and conspired to conduct a pattern of mail and wire fraud activity through an association-in-fact enterprise, in violation of 18 U.S.C. § 1962(c) &

(d). Section 1962(c) provides in pertinent part:

> It shall be unlawful for any persons ... associated with any enterprise ... the activities of which affect interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

Section 1962(d) makes it unlawful "for any person to conspire to violate the provisions of subsection ... (c)." [1]

■ The RICO statute defines an "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The alleged racketeering activity here consists of acts indictable under the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 & 1343, which constitute predicate acts of racketeering under 18 U.S.C. § 1961(1).

Plaintiffs allege that Alpha Beta and Fleming engaged in a fraudulent scheme when they jointly induced the plaintiffs to purchase certain Alpha Beta stores while Alpha Beta secretly planned to raise prices and pursue draconian short-term cost-cutting strategies during the interim between the acceptance of plaintiffs' bids and the transfer of the stores. According to plaintiffs, Alpha Beta drastically curtailed inventories, cut store hours and in-store labor, reduced shelf stock by half, raised prices significantly, eliminated customer services, and transferred large quantities of unmerchantable goods to the new owners. These measures are alleged to have alienated customers and destroyed the business value of the stores. River City Complaint ¶ 15; Fong Complaint ¶ 15.

■ For Rule 12 purposes, plaintiffs' generalized allegations state a claim for which relief could be granted. *See Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1358 (9th Cir.1989) (en banc). Plaintiffs allege that Alpha Beta and Fleming

---

1. It is clear that the defendant corporations are "persons" within the meaning of RICO. Section 1961(3) defines "person" to include "any individual or entity capable of holding a legal or beneficial interest in property."

combined to form an "association-in-fact" enterprise under RICO. In *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the Supreme Court held that RICO applied not only to the infiltration of legitimate businesses by racketeers but also to the activities of informal associations that did not constitute legal entities. After quoting section 1961(4), the Court observed that "[t]here is no restriction upon the associations embraced by the definition: an enterprise includes any union or group of individuals associated in fact." *Id.* at 580, 101 S.Ct. at 2527. The Court later referred to the enterprise alleged in *Turkette*—an arson, narcotics and bribery ring—as "a group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* at 583, 101 S.Ct. at 2528. Following *Turkette*, we have recognized that a group of individuals or corporations may together constitute a RICO enterprise even though they do not incorporate or otherwise form a legal entity. *See, e.g., United States v. Bagnariol*, 665 F.2d 877, 890–91 (9th Cir.1981), *cert. denied*, 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982).

■ The district court dismissed the RICO counts under the mistaken belief that *Rae v. Union Bank*, 725 F.2d 478 (9th Cir.1984), requires that a RICO enterprise "must be an entity separate and distinct from the defendants." Memorandum of Decision and Order at 7. *Rae* does not so hold, and we find nothing in our RICO case law which instructs that two contracting business entities cannot form an "enterprise" for RICO purposes and still be named as individual RICO defendants, provided the enterprise otherwise falls within the statutory proscriptions.

■ *Rae* does not control the case at bar. Rather, it stands for the proposition that a single individual or entity cannot be both the RICO enterprise and an individual RICO defendant. *Rae* simply embodies the maxim that an individual cannot associate or conspire with himself, and in subsequent decisions we have adhered to this narrow reading of *Rae*. *See United States v. Feldman*, 853 F.2d 648, 656 (9th Cir.1988)

(characterizing the *Rae* rule as providing that a defendant cannot be convicted of associating with himself); *United States v. Benny*, 786 F.2d 1410, 1415–16 (9th Cir.) (holding that although an individual defendant could not associate with himself for RICO purposes, he could associate with his own sole proprietorship), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986).

Contrary to the district court's analysis, plaintiffs do not allege that either Alpha Beta or Fleming is simultaneously a RICO enterprise and a RICO defendant. Each of plaintiffs' complaints pleads the existence of a RICO enterprise as follows:

> During the period August 1, 1984 through January 14, 1985 and thereafter, said persons [Alpha Beta and Fleming] associated together to form an enterprise within the meaning of Section 1961(4) which devised a scheme to defraud Plaintiffs and other members of the public by inducing them to purchase ALPHA BETA stores based upon false information relating to the stores' sales volume, profits, leasehold interests and other elements as described herein.

River City Complaint 68; Fong Complaint 68. What plaintiffs allege is that Alpha Beta and Fleming associated together in a business relationship akin to a joint venture to market the grocery stores, and that it was this "enterprise" with which each individual defendant interacted in conducting the alleged pattern of mail and wire fraud activities.

■ Logically, one can associate with a group of which he is a member, with the member and the group remaining distinct entities. As plaintiffs correctly point out, we consistently have held that in multiple-defendant RICO cases, some of the individual defendants may also be identified as members of the alleged association-in-fact enterprise. *See, e.g., Feldman*, 853 F.2d at 657; *United Energy Owners Comm. v. United Energy Management Sys., Inc.*, 837 F.2d 356, 362–63 (9th Cir.1988); *Benny*, 786 F.2d at 1415. Defendants nevertheless ask us to extend *Rae* to effectively bar any action in which a RICO plaintiff

attempts to name all the members of an alleged association-in-fact enterprise as defendants.

All the circuits that have considered the question have concluded that a plaintiff is free to name all members of an association-in-fact enterprise as individual defendants. *See Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1165–66 (3d Cir.1989) (upholding a complaint alleging that three defendant corporations formed an association-in-fact enterprise); *Fleischhauer v. Feltner,* 879 F.2d 1290, 1292 n. 1, 1296–97 (6th Cir.1989) (holding that plaintiffs adequately alleged an enterprise consisting of all the defendants), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 & 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 611 (1990); *see also Haroco, Inc. v. American Nat'l Bank & Trust Co.,* 747 F.2d 384, 401 (7th Cir.1984) ("In the association in fact situation, each participant in the enterprise may be a 'person' liable under RICO, but the association itself cannot be."); *United States v. Huber,* 603 F.2d 387, 394 (2d Cir.1979) (holding before *Turkette* that a group of seven corporations could constitute a RICO enterprise), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980).[2]

### III. SUMMARY JUDGMENT

While the district court erred in dismissing plaintiffs' RICO claims on the ground that plaintiffs failed sufficiently to plead an "enterprise" as required by 18 U.S.C. § 1962(c) & (d), our ruling on the pleadings does not decide the appeal.

■ The district court, having dismissed the RICO counts, did not reach the defendants' pending alternative motions for summary judgment based upon affidavits, depositions, contract documents and other evidence tending to show that no racketeering scheme had been perpetrated. These factual materials were not clearly excluded by the district court and are specifically mentioned in the court's memorandum order dismissing the RICO claims. Accordingly, the district court should have addressed the defendants' alternative motions for summary judgment. *See* Fed.R.Civ.P. 12(b); *Rosales v. United States,* 824 F.2d 799, 802 (9th Cir.1987); *Ellis v. Cassidy,* 625 F.2d 227, 229 (9th Cir.1980).

■ On appeal, both parties argue that in the interest of judicial economy we should reach the summary judgment question. We accept the invitation of the parties to review the record with the purpose of determining whether summary judgment would have been appropriate with reference to the dismissed counts. The whole case is before this court and it would be wasteful to remand it to the trial court for consideration of the motions for summary judgment. *See Duggan v. International Ass'n of Machinists,* 510 F.2d 1086, 1087 (9th Cir.1975); *S & S Logging Co. v. Barker,* 366 F.2d 617, 623 (9th Cir.1966).

#### A. *Standard of Review*

■ Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment must be granted where there is not "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). To survive a motion for summary judgment, plaintiffs must produce sufficient evidence to establish the existence of every essential element of their case on which they will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

#### B. *Analysis*

Virtually every business contract can be called an "association in fact." To constitute a proscribed RICO enterprise the asso-

---

**2.** Both the *Shearin* and *Fleischhauer* courts cited this circuit's *Feldman* decision as supportive of their holdings. *See Shearin,* 885 F.2d at 1165–66; *Fleischhauer,* 879 F.2d at 1297.

ciates must participate, directly or indirectly "in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). After characterizing as fraudulent the master agreement between Fleming and Alpha Beta for the hoped-for profitable disposition of Alpha Beta's unwanted properties, the plaintiffs have pointed to nothing in the agreement that would, if carried out according to its terms, violate any federally protected rights of the plaintiffs. Wholly wanting is any evidence that the agreement between Alpha Beta and Fleming contemplated or permitted a course of conduct that would involve misconduct. The agreement was a routine business arrangement under which Fleming would look for buyers and either sell or lease designated Alpha Beta properties, hopefully at a profit to both parties. Nowhere is there evidence of any contemplated overreaching, deceit, nondisclosure, manipulation of inventory, or any other unethical conduct by Fleming or by Alpha Beta.

We recognize, however, that conspiracies rarely are memorialized in writing and often must be proved by circumstantial evidence. *See United States v. Tille,* 729 F.2d 615, 619 (9th Cir.), *cert. denied,* 469 U.S. 845, 848, 105 S.Ct. 156, 164, 83 L.Ed.2d 93, 100 (1984); *United States v. Thomas,* 887 F.2d 1341, 1347 (9th Cir.1989). Plaintiffs urge that the following evidence in the summary judgment record establishes that Alpha Beta and Fleming jointly engaged in a mail and wire fraud scheme:

1. In August of 1984, Alpha Beta and Fleming made a joint presentation to plaintiffs at which defendants distributed operating statements and five-year sales projections for the stores. Dewey Depo., ER 389, Ex. 4, 24:7–17; Dugger Depo., ER 389, Ex. 9, 46:15–47:18.

2. In September of 1984, Alpha Beta and Fleming mailed the River City plaintiffs a bid form which contained the representation:

"The bidder understands that Alpha Beta Company, from and after the date this bid is accepted through the Closing, will, if the Store is currently open for business, operate the Store in its ordinary course and will continue to maintain the Store as is customary." ER 393, Ex. 2.

3. In October of 1984, Fleming mailed the Fong plaintiffs a bid form with the same representation. ER 392, Ex. 2.

4. Alpha Beta in fact had no formal, written procedures or customary procedures for closing its stores. LaTrace Depo., ER 390, Ex. 19, 85:1–8, 90:12–23.

5. Plaintiffs mailed their completed bid forms to Alpha Beta and Fleming in mid-November of 1984. Plaintiffs relied on the "ordinary course" representations and the sales projections and believed that if their bids were accepted the stores would be turned over to them in good operating condition. Fong Decl., ER 392 ¶¶ 5, 7, 8; Perchaz Decl., ER 393 ¶¶ 5, 7, 8.

6. Alpha Beta and Fleming notified plaintiffs by mail in early December that their bids had been accepted. Fong Decl., ER 392 ¶ 9, Ex. 3; Perchaz Decl., ER 393 ¶ 10, Ex. 4.

7. Beginning in early December 1984, Alpha Beta sent memoranda to its store managers directing them to cut store hours during the holiday period, to keep basic inventories at a minimum, to reduce in-store labor, and to eliminate check-cashing services for customers. ER 390, Ex. 22, 23, 24, 25; Moore Depo., ER 390, Ex. 27, 41:27–42:4; Hart Depo., ER 389, Ex. 10, 350:15–358:6.

8. Beginning in December of 1984, Alpha Beta raised prices dramatically at its Valley stores, particularly on more expensive health and beauty products. Moore Depo., ER 390, Ex. 27, 39:11–12, 45:25–28, 48:25–49:3, 50:3–17.

9. During December and January, Alpha Beta transferred old and unmerchantable goods from other store locations to one of the stores plaintiffs had agreed to purchase. Moore Depo., ER 390, Ex. 27, 55:7–56:10, 59:2–60:10, 63:16–21, 66:20–67:18; Fong Decl., ER 392 14.

10. In December of 1984, Fleming received customer complaints regarding Al-

pha Beta's inventory, price increases, and elimination of check cashing services. Trimble Depo., ER 390, Ex. 32, 153:24–156:20, 275:1–276:10.

Fleming solicited responses from Alpha Beta store managers in regard to these issues and received reports that Alpha Beta had increased inventories of health and beauty products. Albertson Depo., ER 389, Ex. 1, 155:10–22.

11. Representatives from Alpha Beta and Fleming met with plaintiffs in mid-December of 1984. Neither Alpha Beta nor Fleming disclosed the existence or substance of the complaints from store managers. Fong Decl., ER 392 ¶ 12; Perchaz Decl., ER 393 ¶¶ 13, 14.

12. During the final weeks of operation, weekly sales volume at each of the stores decreased. Beck Depo., ER 389, Ex. 2, 90:21–24.

13. In the Purchase Agreements prepared jointly by Alpha Beta and Fleming, the ordinary course representation was modified to provide that:

"The parties acknowledge and agree that Alpha Beta may, in anticipation of the transactions herein, reduce, terminate and stop orders of and ordering of supplies and inventory pursuant to Alpha Beta's customary procedures for closing an Alpha Beta store or business, it being understood that Alpha Beta shall seek to minimize the amount of perishable products, wine and beer located at the premises as of the closing date." ER 392, Ex. 5; ER 393, Ex. 4; Haslam Depo., ER 389, Ex. 12, 91:16–92:8.

14. Alpha Beta and Fleming orally represented to plaintiffs that this language confirmed that the stores would be operated in the ordinary course. Fong Decl., ER 392 ¶ 12; Perchaz Decl., ER 393 ¶ 14.

15. Alpha Beta's attorney conducted numerous interstate telephone conversations with representatives of the plaintiffs during December and January. ER 390, Ex. 13.

This evidence, even when viewed in the light most favorable to plaintiffs, is not enough to survive defendants' motions for summary judgment.

Plaintiffs allege that Alpha Beta and Fleming acted jointly to defraud potential store purchasers. Paragraph 68 of the respective complaints makes clear that plaintiffs contend that Alpha Beta and Fleming *together* "devised a scheme to defraud Plaintiffs." When pressed at oral argument about the lack of evidence of fraudulent representations made by Fleming, plaintiffs' counsel responded by arguing that Fleming merely acquiesced in Alpha Beta's fraud by remaining silent after Fleming became aware that Alpha Beta was operating the stores in a manner contrary to its representations to the buyers. As counsel acknowledged at oral argument, the summary judgment record indicates that the earliest Fleming became aware of Alpha Beta's destructive operation of the stores—and thus the earliest Fleming would have had reason to believe that prior representations to the buyers were fraudulent—was in early December of 1984. Any joint "scheme" to defraud store buyers could not have come into existence until that time. The alleged scheme terminated no later than mid-January of 1985 when the individual store sales closed.

At most, then, plaintiffs have presented circumstantial evidence of roughly a month's worth of broken promises by defendants. In *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court stated that a plaintiff may demonstrate a pattern of racketeering activity "by proving a series of related predicates extending over a substantial period of time." The Court observed that "predicate acts extending over a few weeks or months and threatening no future criminal activity do not satisfy this requirement." *Id.* at 242, 109 S.Ct. at 2902. Under *H.J.*, evidence of a pattern of breach of contract activity spanning just one month, even when embellished by the familiar "racketeering," is not sufficient to establish a violation of RICO.

Plaintiffs' papers fail to meet their burden of producing evidence sufficient to establish all the elements of the substantive RICO claims they allege. *See Celotex,* 477

U.S. at 322, 106 S.Ct. at 2552. Similarly, assuming Fleming's "acquiescence" constituted an agreement sufficient to support a conspiracy claim, the Alpha Beta/Fleming conspiracy could not have commenced prior to early December of 1984, and it likewise could not have extended beyond mid-January of 1985. Therefore, plaintiffs' conspiracy claim under 18 U.S.C. § 1962(d) must also fail.

## IV. CONCLUSION

The possibility of treble damages and attorney fees provides a powerful incentive to plead every commercial disappointment in terms of victimization by racketeers. But epithets in the pleadings, when tested by a motion for summary judgment, are no substitute for facts.

Treating the district court's judgment as one granting the defendants' motions for summary judgment on the RICO claims, we affirm the result reached by the district court.

AFFIRMED.