**WESTWAYS WORLD TRAVEL, et al.,**

v.

**AMR CORP et al.**

**No. 99–CV–0386.**

United States District Court, C.D. California.

Sept. 10, 2001.

Dean Browning Webb, Dean B. Webb Law Offices, Vancouver, WA, Linda S. Platisha, Linda S. Platisha Law Offices, Yorba Linda, CA, for plaintiffs.

Chad S. Hummel, Robert E. Cooper, William A. Wargo, Gibson, Dunn & Crutcher, Los Angeles, CA, for AMR Corporation, American, Airlines Inc. and AMR Eagle Holding Corporation.

Chad S. Hummel, Robert E. Cooper, William A. Wargo, Gibson, Dunn & Crutcher, Los Angeles, CA, for Sabre Group Holdings Inc.

William A. Wargo, Jeffrey A. LeVee, Jones, Day, Reavis & Pogue, Los Angeles, CA, Joshua S. Goodman, Farley J. Neuman, Jenkins, Goodman & Neuman, San Francisco, CA, Kevin D. McDonald, Sarah Mackey Mathias, Anthony P. Lalla, Jones, Day, Reavis & Pogue, Washington, DC, for Airlines Reporting Corporation.

PROCEEDINGS: ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R.CIV.P. 12(b)(6).

TIMLIN, District Judge.

The Court, the Honorable Robert J. Timlin, has read and considered Defendants AMR Corporation ("AMR"), American Airlines, Inc. ("American"), American Eagle Holding Corporation ("American Eagle"), and Sabre Holdings Corporation ("Sabre") (collectively, "Defendants")'s motion to dismiss Plaintiffs Westways World Travel and Sundance Travel Service ("Plaintiffs")'s first amended complaint ("FAC") for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), Plaintiffs' opposition, and Defendants' reply.

The Court has also read and considered Defendant Airlines Reporting Corporation ("ARC")'s motion to dismiss Plaintiffs' FAC, Plaintiffs' opposition and ARC's reply. Based on such consideration, the Court concludes as follows:

## I.

## BACKGROUND

On November 12, 1999 Plaintiffs filed a class action FAC against Defendants and ARC alleging that they violated the Racketeering Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO") and that American, American Eagle and ARC breached a contract with Plaintiffs. Plaintiffs are travel agencies, and allege that Defendants and ARC have conspired to collect money from Plaintiffs by forcing them to pay large penalties for purported "tariff" violations by passengers who purchased airline tickets from Plaintiffs. The purported tariff violations stem from the passengers' use of "back to back supersaver tickets," "hidden city tickets" and round trip tickets used for one-way travel. These types of tickets purchased and used by passengers on American and American Eagle to save money on airline tickets were sold by Plaintiffs to those passengers. Allegedly, American, with the assistance of the other defendants, collected or attempted to collect these passenger savings from Plaintiffs through the issuance of "Debit Memos" (demands for money) by threatening to terminate the contractual right of Plaintiffs to issue airline tickets on American and American Eagle if Plaintiffs did not pay the Debit Memos.

Plaintiffs state the following claims in their FAC: 1) against American for violation of 18 U.S.C. § 1962(a) ("Section 1962(a)"), 2) against American for violation of 18 U.S.C. § 1962(c) ("Section 1962(c)"), 3) against all defendants for violation of 18 U.S.C. § 2 and Sections 1962(a) and (c) under aiding and abetting liability ("third claim"), 4) against all defendants for violation of Sections 1962(a) and (c) under re-

spondeat superior liability ("fourth claim"), 5) against all defendants for violation of 18 U.S.C. § 1962(d) ("Section 1962(d)") for conspiracy to violate Sections 1962(a) and (c) ("fifth claim"), 6) against American, American Eagle, and ARC for breach of contract, 7) against all defendants for unjust enrichment, and 8) against all defendants for declaratory and injunctive relief.

Defendants filed a motion to dismiss Plaintiffs' FAC for failure to state a claim pursuant to Rule 12(b)(6). ARC moved separately to dismiss Plaintiffs' FAC pursuant to Rule 12(b)(6).

## II.

## *ANALYSIS*

### A. Standard for Analyzing A Motion to Dismiss for Failure to State a Claim

A Rule 12(b)(6) motion to dismiss for failure to state a claim is a disfavored one, *see Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir.1986), which may only be granted in extraordinary circumstances. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). Essentially, a motion to dismiss for failure to state a claim tests plaintiff's compliance with the liberal requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure ("Rule 8(a)(2)"). *See* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294–96 (1990).

The burden imposed by Rule 8(a)(2) is a minimal one. Rule 8(a)(2) requires parties seeking relief in federal court by way of complaint, counterclaim, cross-claim, or third party complaint, to include "a short and plain statement of the claim showing that the pleader is entitled to relief". In meeting this requirement, a plaintiff need not set forth the legal basis for his claim, only the facts underlying it. *See McCalden v. California Library Assoc.*, 955 F.2d 1214, 1223 (9th Cir.1990).[1] It is the burden of the party bringing a motion to dismiss for failure to state a claim to demonstrate that the requirements of Rule 8(a)(2) have not been met. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991) ("[U]nder Rule 12(b)(6) the defendant has the burden of showing no claim has been stated.").

As the Supreme Court has noted, when evaluating a complaint for failure to state a claim, the question is not whether the facts stated in the complaint, if proven, would entitle the plaintiff to any relief. Instead, the question is whether there is any set of "facts that could be proved consistent with the allegations of the complaint" which would entitle the plaintiff to some relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).[2] This is true even where plaintiff identifies and relies upon a legal theory in his complaint that would not afford him any relief. *See Haddock v. Board of Dental Examiners of Cal.*, 777 F.2d 462, 464 (9th Cir.1985) ("A complaint should not be dismissed if it states a claim under any

---

1. Although plaintiff need not explicitly identify the legal theory pursuant to which she seeks relief, "the pleadings must at least implicate [i.e., suggest] the relevant legal theories." *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.*, 976 F.2d 58, 62 (1st Cir.1992); *cf. Hicks v. Arthur*, 843 F.Supp. 949, 959 (E.D.Pa.1994) ("[A] pleading must be sufficient enough to enable the court to make out the potential viable legal theories upon which the complaint is based.")

2. In assessing a complaint for failure to state a claim, "facts consistent with the allegations of a complaint" include all "specific facts that are necessary to support the claim." *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Plaintiff will have the benefit of those implied specific facts when a court assesses his or her complaint for failure to state a claim unless plaintiff pleads facts which necessarily contradict them.

theory, even if the plaintiff erroneously relies on a different legal theory.").

## B. Plaintiffs' RICO Claims

The substantive provision of RICO, 18 U.S.C. § 1962, describes the prohibited activities and provides for four different causes of action. Section 1962(a) prohibits "any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise ...." Section 1962(b) prohibits the acquiring or maintaining of an interest in, or control of, any enterprise engaged in interstate commerce using funds from racketeering activity. *See* 18 U.S.C. § 1962(b). Section 1962(c) prohibits "any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Section 1962(d) provides a cause of action for conspiring to violate any of the provisions in subsections (a), (b), or (c).

### 1. *Plaintiffs' Section 1962(c) Claim*

To state a claim under Section 1962(c), a plaintiff must allege the following four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *See Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) "Racketeering activity" under RICO is defined as any act "chargeable" or "indictable" under a number of enumerated state and federal offenses ("predicate" offenses), including extortion and mail fraud. *See* 18 U.S.C. § 1961(1). A "pattern" of racketeering activity requires at least two predicate acts. *See Brady v. Dairy Fresh Products Co.,* 974 F.2d 1149, 1152 (9th Cir.1992); *see also* 18 U.S.C. § 1961(5).

### a. *Predicate Acts Under Section 1962(c)*

### i. *Extortion*

Defendants contend that Plaintiff failed to state facts in claim two of the FAC which alleges extortion under the Hobbs Act because Plaintiffs merely allege a contract dispute. Extortion, as defined by 18 U.S.C. § 1951(b)(2), is the "obtaining of property from another, with his consent, induced by the wrongful use of actual or threatened force, violence, or fear, or under color of official right." Some courts have held that mere contractual disputes cannot constitute extortion. *See, e.g. Toms v. Pizzo,* 4 F.Supp.2d 178, 184 (W.D.N.Y.1998) ("Allegations concerning the scope of [plaintiffs'] contractual obligations cannot suffice as predicate acts under RICO because they involve only what appears to be a disagreement concerning what [plaintiffs'] obligations were."). Other courts have disagreed with this proposition. *See, e.g. Arabian American Oil Co. v. Scarfone,* 939 F.2d 1472, (11th Cir.1991) ("[M]any RICO cases involve contract disputes.").

■ However, this Court need not decide whether disputes regarding contractual obligations may constitute extortion because Plaintiffs allege in their FAC that "American has no enforceable contract or other legal basis that entitles it to collect enormous penalties from plaintiff and the Class members for a passenger's alleged tariff violations." Because Plaintiffs allege that Defendants have no contractual or other legal basis to collect money from them, Plaintiffs have sufficiently alleged facts which constitute multiple acts of extortion by Defendants inducing fear that if Plaintiffs do not pay the Debit Memos Defendants will terminate their contractu-

al entitlement to sell tickets for American and American Eagle flights. Such alleged conduct involves more than a contractual dispute. Thus, the Court will deny Defendants' motion to dismiss Plaintiffs' first claim on this basis.

### ii. Mail Fraud

Defendants contend that Plaintiffs' FAC fails to sufficiently allege facts constituting mail fraud as one of the bases for the second claim for two reasons: 1) Plaintiffs have not stated fraud with sufficient specificity as required by Fed.R.Civ.P.9(b) ("Rule 9(b)"), and 2) Plaintiffs failed to allege they relied on any alleged misrepresentations by mail.

■ Where a plaintiff within a single claim for relief sets forth several legal theories upon which he claims relief is warranted, it is not for the district court to assess the ment of each theory at the pleading stage where plaintiff has made sufficient allegations to support one of the theories. *See Bernheim v. Litt,* 79 F.3d 318, 326 (2d Cir.1996) ("[I]t would be burdensome to have the district court 'prune' a complaint at the pleading stage by making a determination with regard to each allegation within a cause of action that is legally cognizable when viewed in its totality."). Such an analysis is better done in the context of a motion for summary judgment where the true facts, as opposed to the presumed facts, are established. *See id.*

The Court has already concluded that Plaintiffs sufficiently alleged the predicate act of extortion for a Section 1962(c) claim. This Court need not "prune" the FAC of any allegations of mail fraud as another predicate act in determining whether the motion to dismiss should be granted under Rule 12(b)(6). The Court has already con-

cluded Plaintiffs sufficiently pled at least one type of predicate act.[3] Therefore, the Court will deny Defendants' motion to dismiss the second claim on this basis.

### b. Existence of an Enterprise Under Section 1962(c)

Defendants contend that Plaintiffs failed to state sufficient facts demonstrating that Defendants committed a pattern of racketeering activity through an "enterprise" as required by § 1962(c). Plaintiffs allege four "enterprises" under their Section 1962(c) claim. 1) association-in-fact of American and AMR, 2) association-in-fact of American and Sabre, 3) ARC, and 4) association-in-fact of American and American Eagle. Plaintiffs state in the second claim that both American and American Eagle are wholly owned subsidiaries of AMR, and that AMR owns 82% of Sabre. According to Plaintiffs' FAC, ARC's articles of incorporation allow ARC's stock to be held by as many as thirty airlines, but no one airline is permitted to own more than one share or to have more than one representative on ARC's Board of Directors ("Board"). Plaintiffs allege that American owns one share of ARC's outstanding stock and has one representative on ARC's Board of Directors. Defendants argue that Plaintiffs fail to allege an "enterprise" because a corporation and its subsidiaries and agents do not constitute an "enterprise" under Section 1962(c).

To state a claim under Section 1962(c), a plaintiff must allege "conduct by a 'person employed by or associated with any enterprise'" and that the defendants act through a distinct "enterprise." *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 262, 268 (3rd Cir.1995). RICO defines "enterprise" in 18 U.S.C.

---

**3.** Although RICO requires a pattern of racketeering activity, rather than just one predicate act, Plaintiffs have alleged more than one discrete act of extortion. Therefore, the alleged acts of extortion are sufficient to allege a "pattern" under RICO.

§ 1961(4) to "includ[e] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The definition of an "enterprise" within the meaning of RICO "encompasses both groups with a formal legal structure and those whose members merely associate in fact." *Simon v. Value Behavioral Health, Inc.,* 208 F.3d 1073, 1083 (9th Cir.2000).

In *Rae v. Union Bank,* 725 F.2d 478 (9th Cir.1984), the Ninth Circuit held that the RICO enterprise and the RICO person or defendant must be separate and distinct from each other. *See* 725 F.2d at 481. However, the Ninth Circuit clarified in *River City Markets, Inc. v. Fleming Foods West, Inc.,* 960 F.2d 1458 (9th Cir. 1992) that a corporation may be both the RICO person and a member of an association-in-fact enterprise. *See* 960 F.2d at 1461–1462. The *River City Markets* court explained: "[*Rae* ] stands for the proposition that a single individual or entity cannot be both the RICO enterprise and an individual RICO defendant. *Rae* simply embodies the maxim that an individual cannot associate or conspire with himself...." *Id.* at 1461. The Ninth Circuit had previously held that where there are multiple defendants, "some of the individual defendants may also be identified as members of the alleged association-in-fact enterprise." *Id.* (citations omitted). *River City Markets* extended this holding to include multiple-defendant RICO cases when all the individual defendants are named as members of the alleged association-in-fact enterprise. *See id.* at 1462.

Pursuant to the requirement that the RICO enterprise and defendant be "separate and distinct," other courts have held that a Section 1962(c) claim may not be actionable when a parent corporation is the alleged "RICO person" and a wholly owned subsidiary is the alleged "enter-

prise." *See, e.g. R.R. Brittingham v. Mobil Corp.,* 943 F.2d 297, 301 (3rd Cir.1991). The *Brittingham* court reasoned that:

a § 1962(c) enterprise must be more than an association of individuals or entities conducting the normal affairs of a defendant corporation. A corporation must always act through its employees and agents, and any corporate act will be accomplished through an "association" of these individuals or entities. Consequently, the [distinctiveness] rule would be eviscerated if a plaintiff could successfully plead that the enterprise consists of a defendant corporation in association with employees, agents, or affiliated entities acting on its behalf. The distinctiveness requirement ensures that RICO sanctions are directed at the persons who conduct the racketeering activity, rather than the enterprise through which the activity is conducted.

*Id.* In order to bring a Section 1962(c) claim alleging the parent corporation as the defendant, "the plaintiff must plead facts showing the parent's role in the racketeering activity is clearly distinct from its inherent control over the regular business activities of its subsidiary." *Bodtker v. Forest City Trading Group,* 1999 WL 778583, at *6 (D.Or. Oct.1, 1999), *citing Lorenz v. CSX Corp.,* 1 F.3d 1406, 1411–12 (3rd Cir.1993).

The Circuits are split concerning the converse situation — when a subsidiary is the alleged RICO "person" and a parent corporation is the alleged "enterprise." *Compare Haroco, Inc. v. American Nat'l Bank and Trust Co. of Chicago,* 747 F.2d 384, 402 (7th Cir.1984), *aff'd on other grounds,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) ("The subsection requires only some separate and distinct existence for the person and the enterprise, and a subsidiary corporation is certainly a legal entity distinct from its parent"), *with*

*Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2nd Cir.1996), *vacated on other grounds,* 525 U.S. 128, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998) ("It would be inconsistent for a RICO person, acting within the scope of its authority, to be subject to liability simply because it is separately incorporated, whereas otherwise it would not be held liable.").

The Ninth Circuit has not specifically addressed these issues. However, this Court need not decide which line of authority to follow, because Plaintiffs do not merely allege subsidiaries or a parent corporation as the RICO persons or the RICO enterprise. Plaintiffs allege four different possible enterprises. Three of them are different variations of AMR, the parent company, and its subsidiaries or a corporation over which AMR has almost complete control, American, American Eagle, and Sabre. However, one of the alleged enterprises is ARC.

▮ Defendants contend that the allegations in the FAC show that ARC is an agent of American. It is alleged that American owns only one share of 30 shares of stock issued by ARC and has only one member on the ARC Board. The allegations that ARC sometimes acts on behalf of American, does not cause an inference that ARC is wholly or mostly controlled by American or AMR. Merely acting as an agent at times does not negate the distinctiveness of ARC as an entity separate from American.

Defendants' reliance on *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir.1997) to support its contention that ARC is not a distinct enterprise is misplaced. In *Fitzgerald,* the plaintiff argued Chrysler was the RICO person and that subsidiaries of Chrysler and its dealers constituted the enterprise. *See id.* at 226. In voting to affirm the dismissal of the RICO claim, Judge Posner reasoned that virtually every manufacturer does business through agents and likened the dealers to employees. *See id.* at 227 ("If Chrysler were even larger than it is and as a result had no agents, but only employees (it might own all its dealerships) "). If Chrysler had worked solely with employees, it could not be liable under RICO. Thus, Judge Posner wrote it should not make a difference under RICO that Chrysler sold its products to consumers through franchised dealers rather than through dealerships that it owns. *See id.*

The instant action is factually distinguishable from *Fitzgerald* on two grounds. First, ARC's alleged relationship to American is not analogous to the relationship between Chrysler and its franchised dealers. ARC is not as closely related to American. ARC is not merely selling tickets for or acting on American's or American Eagle's behalf. According to Plaintiffs' FAC, "ARC acts as a central clearinghouse for travel agencies to report, settle and account for airline ticket sales on behalf of its member airlines. ARC has approximately 140 airline members who subscribe to its programs through an ARC Carrier Services Agreement." A closer analogy to the dealers in *Fitzgerald* would be Plaintiffs and other travel agents by contract with ARC, primarily selling tickets for flights on American and American Eagle. The FAC contains no such allegations. Here, the allegations in the FAC militate against any inference that American is a parent corporation simply exercising its power over ARC which would be inherent in its status as a parent. *See Williams v. Ford Motor Co.,* 11 F.Supp.2d 983, 988 (N.D.Ill.1998) (distinguishing *Fitzgerald* "this is not a case where the corporate RICO person acting through its affiliates is identical to the alleged enterprise since [the dealer and alleged RICO person] does not work through Ford, but rather is under contract with Ford to provide

and process Ford's [extended service plans].")

Second, even if ARC is considered analogous to a subsidiary or franchised dealer, Plaintiffs did not only allege American as a RICO person and ARC as an enterprise. Plaintiffs also allege ARC as a RICO person, and alleged enterprises of which ARC is not a member. Thus, *Fitzgerald* would be inapplicable even if this action was in the Seventh Circuit. *See Haroco*, 747 F.2d at 402 (holding that alleging a subsidiary as the RICO person and a parent as the enterprise is sufficient under Section 1962(c)).

The Court concludes that Plaintiffs have alleged in the FAC enterprises which are sufficiently distinct from the alleged RICO persons under Section 1962(c). Therefore, the Court will deny Defendants' motion to dismiss on this basis.

### 2. *Plaintiffs' Section 1962(a) Claim*

■ Defendants contend that Plaintiffs failed to allege facts demonstrating any "injury" from the investment of "racketeering income" as required under Section 1962(a). To state facts alleging a claim under Section 1962(a), a plaintiff must allege he or she suffered injury arising from the defendant's use or investment of racketeering income, as opposed to injury from the predicate racketeering acts themselves. *See Nugget Hydroelectric, L.P. v. Pacific Gas & Electric Co.*, 981 F.2d 429, 437 (9th Cir.1992). General, conclusory, or vague allegations are insufficient. *See id.*

■ Although the Ninth Circuit has not yet ruled directly on this issue, the majority of courts hold that the mere reinvestment of racketeering proceeds into a corporation is not sufficient under Section 1962(a). *See Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 779 n. 6 (7th Cir.1994). As the Third Circuit in *Brittingham* explained, "[a] plaintiff

must allege ... more than a remote connection between the use or investment of racketeering income and the injury suffered." 943 F.2d at 304. The *Brittingham* court concluded that the reinvestment of racketeering proceeds is too remote a connection. *See id.* at 305.

> If this remote connection were to suffice, the use-or-investment injury requirement would be almost completely eviscerated when the alleged pattern of racketeering is committed on behalf of a corporation ... Over the long term, corporations generally reinvest their profits, regardless of the source. Consequently, almost every racketeering act by a corporation will have some connection to the proceeds of a previous act. Section 1962(c) is the proper avenue to redress injuries caused by the racketeering acts themselves. If plaintiffs' reinvestment injury concept were accepted, almost every pattern of racketeering activity by a corporation would be actionable under § 1962(a), and the distinction between § 1962(a) and § 1962(c) would become meaningless.

*Id.; see also Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 896 (8th Cir.1999) (holding that a plaintiff must allege an injury that is separate and distinct from injuries allegedly caused by the defendant's engaging in the predicate acts, and that allegations of reinvesting racketeering income does not suffice), *Kaczmarek v. International Business Machines Corp.*, 30 F.Supp.2d 626, 628–29 (S.D.N.Y.1998) (concluding that reinvestment of racketeering income is not an "injury" under Section 1962(a) because the real cause of injury would be the predicate racketeering acts, not the investment of the proceeds in the enterprise.) This Court agrees that allegations of reinvesting the racketeering income are insufficient to state an injury arising from the defendant's use or investment of racketeering income under Section 1962(a).

Here, Plaintiffs allege that the money American received from its alleged racketeering activities were invested into its Debit Memo department and into ARC, Sabre, American Eagle and AMR to increase the volume of Debit Memos issued. Plaintiffs further allege that investing this money has enabled American to increase its issuance of Debit Memos and the collection of the alleged unlawful penalties from travel agents including Plaintiffs. These allegations fail to state facts which amount to an injury to Plaintiffs arising from Defendants' use or investment of racketeering income, as opposed to injury from the predicate racketeering acts themselves. *See Nugget Hydroelectric*, 981 F.2d at 437. Plaintiffs merely allege Defendants reinvested the proceeds obtained from its alleged predicate racketeering acts, which then enabled Defendants to increase the same racketeering activities. The real injury allegedly suffered by Plaintiffs is from the racketeering activity, not from the investment of the proceeds. *See Kaczmarek*, 30 F.Supp.2d at 628–29. Therefore, the Court will grant Defendants' motion to dismiss Plaintiffs' Section 1962(a) claim without prejudice.

### 3. *Aiding and Abettor and Respondeat Superior Liability*

Defendants contend that Plaintiffs' claims for RICO "conspiracy," "respondeat superior liability," and "aider and abettor liability" are predicated on the substantive claims under RICO Sections 1962(a) and (c), and thus must fail with those claims. To the extent Plaintiffs' third, fourth, and fifth claims are predicated on its Section 1962(a) claim, they will be dismissed.

However, the Court will not dismiss Plaintiffs' Section 1962(c) claim because Defendants' argument is meritless. Thus, the Court will deny Defendants' motion to dismiss Plaintiffs' third, forth, and fifth claims on this basis.

Defendant ARC further challenges Plaintiffs' RICO claim against it based on aider or abetter liability. ARC contends that aider and abetter liability under 1962(c) did not survive *Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). In *Central Bank*, the United States Supreme Court held because there was no language within the Securities Exchange Act of 1934 § 10(b) ("Section 10(b)") creating liability for aiding and abetting, there was no aiding and abetting liability under Section 10(b). *See Central Bank*, 511 U.S. at 177–78, 114 S.Ct. at 1448. The majority of courts which have addressed the issue since *Central Bank* have concluded that there is no basis to distinguish Section 1962(c) under RICO from Section 10(b), and thus there is no aiding and abetting liability under Section 1962(c) *See Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 656–657 (3rd Cir.1998). The Ninth Circuit has not yet addressed this issue.

This Court need not determine whether there is aiding and abetting liability under Section 1962(c), because Plaintiffs' aiding and abetting claim against ARC is insufficiently pled for another reason. ARC contends that Plaintiffs' aiding and abetting Section 1962(c) claim against it must be dismissed because they failed to allege that ARC participated in the operation or management of an enterprise.[4] In *Reves*

---

4. Although Plaintiffs allege ARC is an enterprise under its Section 1962(c) claim, Plaintiffs cannot bring a Section 1962(c) claim against ARC if ARC is also alleged as the enterprise. *See Rae*, 725 F.2d at 481 (holding that a single individual or entity cannot be

both the RICO enterprise and an individual RICO defendant). Thus, Plaintiffs may only bring a Section 1962(c) claim against ARC in connection with the other alleged enterprises—1) association-in-fact of American and AMR, 2) association-in-fact of American and

*v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the United States Supreme Court held that to bring a claim under Section 1962(c), a plaintiff must establish that the defendant participated in the "operation or management" of the enterprise. *See Reves,* 507 U.S. at 183, 113 S.Ct. at 1172.

Again, although the Ninth Circuit has not addressed this specific issue, other courts which have allowed aiding and abetting liability under Section 1962(c) have held that those claims must still satisfy the "operation or management" requirement. *See, e.g. United States v. Antar,* 53 F.3d 568, 581 (3d Cir.1995) ("[I]f Congress' restriction of Section 1962(c) liability to those who operate or manage the enterprise can be avoided simply by alleging that a defendant aided and abetted or conspired with someone who operated or managed the enterprise, then *Reves* would be rendered almost nugatory.") (citation omitted); *see also United States v. Viola,* 35 F.3d 37, 40–41 (2nd Cir.1994) ("Under the Court interpretation [in *Reves* ], simply aiding and abetting a violation is not sufficient to trigger liability . . ."); *Early v. K–Tel Int'l, Inc.,* 1999 WL 181994, at *7 (N.D.Ill. March 24, 1999) (applying *Reves* to aiding and abetting Section 1962(c) claim); *Sundial Int'l Fund Ltd. v. Delta Consultants, Inc.,* 1998 WL 196212, at *2 (S.D.N.Y. April 22, 1998) ("In addition, RICO liability for aiding and abetting would require some form of active participation in the operation of the RICO enterprise."); *Lippe v. Bairnco Corp.,* 218 B.R. 294, 304 (S.D.N.Y.1998) ("A defendant is not liable under § 1962(c) for aiding and abetting RICO violations unless it had some part in directing the affairs of the RICO Enterprise."); *In re American Honda Motor Co., Inc., Dealerships Relations Litigation,* 965 F.Supp. 716, 723 (D.Md.1997).

■ Plaintiffs do not state facts in the third claim of the FAC that ARC participated in the operation or management of any of the alleged RICO enterprises. Therefore, Plaintiffs fail to state facts alleging an aiding and abetting 1962(c) claim against ARC. Accordingly, the Court will grant ARC's motion to dismiss Plaintiffs' third claim against it without prejudice insofar as it alleges ARC aided and abetted the violation of Section 1962(c).

### 4. *Conspiracy Liability Under Section 1962(d)*

Plaintiffs' Section 1962(d) claim against ARC for conspiracy to violate Section 1962(c) fails for the same reason the aider and abetter claim against ARC was insufficiently pled as to a violation of Section 1962(c). Section 1962(d) of RICO provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subSection (a), (b), or (c) of this Section." The Ninth Circuit has defined conspiracy in the RICO context as "an agreement to conduct or participate in the affairs of an enterprise and an agreement to the commission of at least two predicate acts." *Baumer v. Pachl,* 8 F.3d 1341, 1346 (9th Cir.1993) (citation omitted).

■ In *Neibel v. Trans World Assurance Co.,* 108 F.3d 1123 (9th Cir.1997), the Ninth Circuit recognized an existing split among the circuits relating to the impact of *Reves* on Section 1962(d) claims, and chose to follow the Third Circuit in *Antar,* which held that the *Reves'* management and control test applies to RICO conspiracy claims. The *Antar* Court reasoned:

> [W]e believe that a distinction can be drawn between, on the one hand, conspiring to operate or manage an enterprise, and, on the other, conspiring with

Sabre, or 3) association-in-fact of American and American Eagle.

someone who is operating or managing the enterprise. Liability under Section 1962(d) would be permissible under the first scenario, but, without more, not under the second. This is because in the former situation, the defendant is conspiring to do something for which, if the act was completed successfully, he or she would be liable under Section 1962(c). But in the latter scenario, the defendant is not conspiring to do something for which he or she could be held liable under the substantive clause of the statute. Therefore, liability should not attach.

53 F.3d at 581. The *Neibel* court thus held that an agreement to have some part in directing the affairs of the RICO enterprise is necessary to a claim of violating Section 1962(c). *See Neibel*, 108 F.3d at 1128. As discussed above, Plaintiffs have not stated in the fifth claim of the FAC facts as to ARC participating in the operation or management of any of the alleged RICO enterprises. Further, Plaintiffs do not state facts that allege ARC agreed to have some part in directing the affairs of any of the alleged RICO enterprises.[5] Therefore, the Court will grant ARC's motion to dismiss Plaintiffs' Section 1962(d) claim against it insofar as it alleges a conspiracy to violate Section 1962(c) without prejudice.

## C. Plaintiffs' State Law Causes of Action

### 1. *Breach of Contract*

 Defendants contend that Plaintiffs failed to state sufficient facts alleging Defendants breached any contract with Plaintiffs. To state a claim for breach of contract, a plaintiff must allege the following essential elements: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Reichert v. General Ins. Co. of America*, 68 Cal.2d 822, 830, 69 Cal.Rptr. 321, 325, 442 P.2d 377 (1968). Plaintiffs allege the existence of a contract, the Agent Reporting Agreement ("ARA"), between them and American, American, Eagle, and ARC. The seventh claim contains allegations that those Defendants breached the ARA contract, and that Plaintiffs suffered damages as a result. Defendants argue that Plaintiffs failed to allege the specific terms of the contract. Under Rule 8(a)(2) scrutiny, the court concludes Plaintiffs have stated adequate specific facts to allege a breach of contract.

ARC also argues that Plaintiffs did not allege that ARC engaged in any of the activities that allegedly breached the ARA. However, Plaintiffs allege "American, American Eagle and ARC have and continue to breach the [ARA] by issuing or enforcing the payment of the Debit Memos for 'damages' ...." Therefore, Plaintiffs have alleged enough facts to state a claim for breach of contract against ARC. Accordingly, the Court will deny Defendants' and ARC's motions to dismiss Plaintiffs' sixth claim for breach of contract.

### 2. *Unjust Enrichment and Declaratory Relief Claims*

Defendants contend that Plaintiffs' claims for unjust enrichment and declaratory relief are predicated on other claims, and should be dismissed because Plaintiffs

---

**5.** As discussed above (see discussion on aider and abettor liability), Plaintiffs cannot state a claim under Section 1962(c) against ARC as a defendant if ARC is also the enterprise. *See Rae*, 725 F.2d at 481. The same holds true for Plaintiffs' Section 1964(d) claim predicated on a Section 1962(c) violation. Therefore, Plaintiffs may only bring a Section 1962(d) claim against ARC in connection with the other alleged enterprises—1) association-in-fact of American and AMR, 2) association-in-fact of American and Sabre, or 3) association-in-fact of American and American Eagle.

failed to allege a claim for a RICO violation or for breach of contract. Because the Court has not dismissed all of Plaintiffs' RICO claims or the breach of contract claim, the Court will deny Defendants' motion to dismiss Plaintiffs' claims for unjust enrichment and declaratory relief on this basis.

■■■ ARC separately urges that Plaintiffs failed to allege ARC received any monies paid by Plaintiffs to American pursuant to the Debit Memos, and thus Plaintiffs failed to allege unjust enrichment against ARC. To allege unjust enrichment, a plaintiff must allege "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. Seoulbank*, 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881, 883 (2000). In the FAC, Plaintiffs allege that all the defendants, which includes ARC, collected money from them pursuant to the Debit Memos process. Therefore, Plaintiffs have sufficiently alleged that ARC received money. Accordingly, the Court will deny ARC's motion to dismiss Plaintiffs' unjust enrichment claim against it.

### III.

### *DISPOSITION*

IT IS ORDERED THAT,

(1) Defendants' motion pursuant to Rule 12(b)(6) to dismiss the FAC is GRANTED as to Plaintiffs' first claim against Defendant American for violation of Section 1962(a) and Plaintiffs third, fourth and fifth claims against all Defendants regarding the alleged violation of Section 1962(a). These claims are DISMISSED WITHOUT PREJUDICE;

(2) The remainder of Defendants' motion to dismiss under Rule 12(b)(6) is DENIED,

(3) ARC's motion pursuant to Rule 12(b)(6)to dismiss the FAC is GRANTED as to Plaintiffs' third and fifth claims against it; these claims against ARC are DISMISSED WITHOUT PREJUDICE;

(4) The remainder of ARC's motion to dismiss under Rule 12(b)(6) is DENIED, and,

(5) Plaintiffs have 18 days from the date of this Order to file a second amended complaint.